[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 115.]

HOLETON ET AL., PETITIONERS, *v.* CROUSE CARTAGE COMPANY ET AL.;

CONRAD, ADMR., RESPONDENT.

[Cite as *Holeton v. Crouse Cartage Co.*, 2001-Ohio-109.]

*Workers' compensation—Subrogation right of statutory subrogee against third party–R.C. 4123.931, in its present form, is unconstitutional.*

(No. 00-428—Submitted October 10, 2000—Decided June 27, 2001.)

ON ORDER from the United States District Court for the Northern District of Ohio, Western Division, Certifying a Question of State Law, No. 98CV-7578.

————————————

ALICE ROBIE RESNICK, J.

{¶ 1} This case comes to us as certified questions of state law from the United States District Court for the Northern District of Ohio, Western Division. The federal district court certified the following facts to us:

"Plaintiff, Rick Holeton, was injured on June 18, 1998. He and his plaintiff spouse, Shari, have two minor children, also plaintiffs herein. At the time of his accident, Rick was part of a construction crew employed by Harper Structures, Inc., building an overpass across the Ohio Turnpike. The telescoping 'manlift' bucket in which Rick was standing was struck by an eastbound truck owned and/or operated by defendants, James Parr and Crouse Cartage Company. The force of the impact propelled Rick out of the bucket, slamming him into the underside of the overpass and then dropping him on to the highway below.

"Because his injuries occurred in the course and scope of his employment with Harper Structures, Rick Holeton has received, and may indefinitely continue to receive, workers' compensation benefits from defendant, Bureau of Workers' Compensation (BWC), pursuant to Chapter 4123 of the Revised Code. Rick Holeton's wage and medical benefits to date exceed $190,000.

"BWC is a 'statutory subrogee' within the meaning of R.C. § 4123.931, referred to herein as Ohio's subrogation statute. As a statutory subrogee with respect to workers' compensation benefits previously or hereafter paid to Rick Holeton, BWC has asserted a subrogation claim against any settlement made or judgment paid to Rick Holeton by or on behalf of the other defendants.[1] Plaintiffs dispute the validity of BWC's subrogation claim and argue that the statute violates relevant sections of Ohio's Constitution. BWC denies that the statute is unconstitutional and seeks to enforce its right of subrogation.

"Plaintiffs filed a motion for summary judgment asking the court to declare the subrogation statute unconstitutional. In the alternative, plaintiffs requested an order certifying the issue to the Ohio Supreme Court. The court has stayed plaintiffs' motion for summary judgment and granted plaintiffs' motion to certify the issue to the Ohio Supreme Court."

{¶ 2} On May 3, 2000, this court reviewed the preliminary memoranda pursuant to S.Ct.Prac.R. XVIII and determined that it will answer the following certified questions:

"1. Does R.C. § 4123.931 violate Article II, Section 35 of the Ohio Constitution?

"2. Does R.C. § 4123.931 violate Article I, Section 19 of the Ohio Constitution?

"3. Does R.C. § 4123.931 violate Article I, Section 16 of the Ohio Constitution?

"4. Does R.C. § 4123.931 violate Article II, Section 28 of the Ohio Constitution?

---

1. Footnote one of the order states: "R.C. § 4123.931 provides, in part, that BWC's right of subrogation is automatic, that no settlement or other recovery is final without notice to BWC, and that the entire amount of any settlement is subject to BWC's subrogation right."

"5. Does R.C. § 4123.931 violate Article I, Section 2 of the Ohio Constitution?

"6. Does R.C. § 4123.931 violate Article II, Section 15 of the Ohio Constitution?

"7. Is R.C. § 4123.931 contrary to Ohio Civil Rule 49(C) and, therefore, invalid and unenforceable?

"8. Does R.C. § 4123.931 constitute an invalid waiver of an injured employee's right to receive and retain workers' compensation benefits in violation of R.C. § 4123.80." (2000), 88 Ohio St.3d 1500, 727 N.E.2d 923.

{¶ 3} R.C. 4123.931 provides:

"(A) The payment of compensation or benefits pursuant to this chapter or Chapter 4121., 4127., or 4131., of the Revised Code creates a right of subrogation in favor of a statutory subrogee against a third party. A statutory subrogee's subrogation interest includes past payments of compensation and medical benefits and estimated future values of compensation and medical benefits arising out of an injury to or disability or disease of a claimant.

"(B) A claimant shall notify a statutory subrogee of the identity of all third parties against whom the claimant has or may have a right of recovery. No settlement, compromise, judgment, award, or other recovery in any action or claim by a claimant shall be final unless the claimant provides the statutory subrogee with prior notice and a reasonable opportunity to assert its subrogation rights. If a statutory subrogee is not given that notice, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest.

"(C) The right of subrogation under this chapter is automatic, regardless of whether a statutory subrogee is joined as a party in an action by a claimant against a third party. A statutory subrogee may assert its subrogation rights through correspondence with the claimant and the third party or their legal representatives.

A statutory subrogee may institute and pursue legal proceedings against a third party either by itself or in conjunction with a claimant. If a claimant disputes the validity or amount of an asserted subrogation interest, the claimant shall join the statutory subrogee as a necessary party to the action against the third party.

"(D) The entire amount of any settlement or compromise of an action or claim is subject to the subrogation right of a statutory subrogee, regardless of the manner in which the settlement or compromise is characterized. Any settlement or compromise that excludes the amount of compensation or medical benefits shall not preclude a statutory subrogee from enforcing its rights under this section. The entire amount of any award or judgment is presumed to represent compensation and medical benefits and future estimated values of compensation and medical benefits that are subject to a statutory subrogee's subrogation rights unless the claimant obtains a special verdict or jury interrogatories indicating that the award or judgment represents different types of damages.

"(E) Subrogation does not apply to the portion of any judgment, award, settlement, or compromise of a claim to the extent of a claimant's attorney's fees, costs, or other expenses incurred by a claimant in securing the judgment, award, settlement, or compromise, or the extent of medical, surgical, and hospital expenses paid by a claimant from the claimant's own resources for which reimbursement is not sought. No additional attorney's fees, costs, or other expenses in securing any recovery may be assessed against any subrogated claims of a statutory subrogee."

{¶ 4} R.C. 4123.93(B) defines "statutory subrogee" as "the administrator of the bureau of workers' compensation, a self-insuring employer, or an employer that contracts for the direct payment of medical services pursuant to division (L) of section 4121.44 of the Revised Code."

I

Section 35, Article II—The Great Compromise

{¶ 5} The first certified question is whether R.C. 4123.931 violates Section 35, Article II of the Ohio Constitution, which provides:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

{¶ 6} Resolution of this issue requires some historical knowledge of the legal climate that invoked the unanimous adoption of Proposal Number 24, or Section 35, Article II, at the Constitutional Convention of 1912 and the enactment of Ohio's first compulsory workers' compensation law, 103 Ohio Laws 72, on February 26, 1913.

{¶ 7} Prior to 1913, the employee's ability to receive compensation for work-related injuries was governed by the common law of torts. Although the principle of vicarious liability had long been recognized at common law, it was far more difficult for the injured worker to recover damages from his or her employer than it was for the stranger to the employment relationship. The injured employee was required to prove that the employer violated a duty of care owed specifically to employees. Even upon overcoming this hurdle, until 1911 the employee was faced with what became known as the "unholy trinity of common-law defenses"— contributory negligence, the fellow servant rule, and assumption of risk. 102 Ohio

Laws 529, Section 21-1. These defenses were truly draconian in their application. The defense of contributory negligence applied to bar any recovery if the employee's negligence contributed even slightly to the injury. The fellow servant rule was modified in most jurisdictions to exclude from the category of fellow servants all employees charged with carrying out the employer's common-law duties, but Ohio courts limited the exclusion to employees serving in supervisory capacities. *Cleveland, Columbus & Cincinnati RR. Co. v. Keary* (1854), 3 Ohio St. 201, 1854 WL 3. And the doctrine of assumption of risk applied to preclude recovery on the basis that even the barely subsisting worker is free to decline any service in which he or she apprehends danger. See, generally, Fulton, Ohio Workers' Compensation Law (2 Ed.1998) 13-16, Sections 2.1 to 2.5.

{¶ 8} The common-law system proved incapable of dealing with the often devastating social and economic consequences of industrial accidents. It became undeniable that the tort system had failed as a regulatory device for distributing economic losses borne by injured Ohio workers and their families and that it should be replaced by a workers' compensation system in which those losses would be charged, without regard to fault or wrongdoing, to the industry rather than to the individual or society as a whole. See, *e.g., Goodman v. Beall* (1936), 130 Ohio St. 427, 5 O.O. 52, 200 N.E. 470; *Indus. Comm. v. Weigandt* (1921), 102 Ohio St. 1, 4, 130 N.E. 38, 38-39; *State ex rel. Munding v. Indus. Comm.* (1915), 92 Ohio St. 434, 111 N.E. 299; *State ex rel. Yaple v. Creamer* (1912), 85 Ohio St. 349, 97 N.E. 602.

{¶ 9} Accordingly, Section 35, Article II represents a social bargain in which employers and employees exchange their respective common-law rights and duties for a more certain and uniform set of statutory benefits and obligations. Thus, in *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 508, 433 N.E.2d 572, 577, we explained that the Workers' Compensation Act "operates as a balance of mutual compromise between the

interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability." See, also, *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 465, 696 N.E.2d 1029, 1031-1032. "This compromise is the basic premise underlying the workers' compensation system." Fulton, *supra*, at 4, Section 1.2.

{¶ 10} Petitioners contend that R.C. 4123.931 is unconstitutional "because it effectively deprives employees of the 'benefit of their bargain' and destroys the balance struck between employers and employees by Article II, Section 35 of the Ohio Constitution." In support, petitioners argue (1) that "[t]he subrogation statute unjustifiably permits [the bureau] and self-insuring employers * * * to recover 100% of benefits paid to injured employees, while the subrogees continue to enjoy immunity from suit," (2) that the statute does not serve the "purpose of providing compensation to workmen and their dependents" as required by Section 35, Article II, but instead operates to take compensation away from them, and (3) that the statute forces the claimant-plaintiff to choose between workers' compensation or a tort remedy, despite the fact that the Constitution guarantees him or her the right to both.

{¶ 11} We find these arguments unpersuasive. First, at a core level petitioners are suggesting that the very concept of a workers' compensation subrogation statute is repugnant to Section 35, Article II. Indeed, supporting *amicus* Ohio Academy of Trial Lawyers observes that, "as argued by the Petitioner, the Ohio Constitution itself may prevent the legislature from ever validly enacting a subrogation statute in the workers' compensation context unless the constitutional provision enabling that legislation is itself amended." However, Section 35, Article II does not preclude the enactment of a subrogation statute any more than it prohibits the injured claimant from suing the third-party tortfeasor. Section 35,

Article II enables a displacement of the common law only to the extent necessary to provide the injured worker with an automatic recovery. Once payment of workers' compensation benefits is ensured, the employer may, without any disparagement to the bargained-for rights of the employee, seek to impose the loss upon the ultimate wrongdoer.

{¶ 12} Moreover, as revealed by the compilation of statutes in the appendix to petitioners' merit brief, virtually every jurisdiction provides some statutory mechanism enabling the employer or fund to recover its workers' compensation outlay from a third-party tortfeasor. Any decision that would hold the mere concept of a subrogation or reimbursement statute *per se* invalid in the workers' compensation context would constitute a legal anomaly.

{¶ 13} Second, petitioners confuse the effect that R.C. 4123.931 may have on the claimant-plaintiff's tort recovery with the effect that it has on the claimant's workers' compensation recovery. R.C. 4123.931 does not operate to reduce the claimant's workers' compensation benefits. The statute may indeed operate beyond its legitimate purpose and unconstitutionally affect the employee's right to a full recovery against the third-party tortfeasor. It may be true, as petitioners and supporting *amici* argue strenuously, that the statute can diminish or extinguish the claimant's tort recovery irrespective of whether a double recovery has actually occurred. But these concerns are not relevant here. Regardless of whether and to what extent R.C. 4123.931 impermissibly cuts into a claimant's tort recovery, it does nothing to the claimant's workers' compensation. After the statute completes its task, however unjustly to the claimant's tort recovery, the claimant is always left with the full measure of compensation and benefits to which he or she is entitled under the Workers' Compensation Act.

{¶ 14} Thus, R.C. 4123.931 does not disrupt any of the rights or obligations of the claimant and the employer with regard to the payment of statutory workers'

compensation benefits, and the balance of compromise upon which the viability of the workers' compensation system depends remains intact.

{¶ 15} Accordingly, we answer the first certified issue in the negative and hold that R.C. 4123.931 does not violate Section 35, Article II of the Ohio Constitution.

## II

### Sections 16 and 19, Article I—The Take-Away

{¶ 16} The second certified issue is whether R.C. 4123.931 violates Section 19, Article I of the Ohio Constitution, which provides that "[p]rivate property shall ever be held inviolate, but subservient to the public welfare * * * and * * *, where private property shall be taken for public use, a compensation therefor shall first be made."

{¶ 17} As well stated by the court in *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 546, 21 O.O. 422, 424-425, 38 N.E.2d 70, 73:

"No government could long continue to function if all property rights were unqualifiedly inviolate. But, on the other hand, the constitutional guaranty of the right of private property would be hollow if all legislation enacted in the name of the public welfare were *per se* valid. To be truly in the public welfare within the meaning of Section 19, and thus superior to private property rights, any legislation must be reasonable, not arbitrary, and must confer upon the public a benefit commensurate with its burdens upon private property. This general doctrine was comprehensively stated by this court in *Froelich v. City of Cleveland* [1919], 99 Ohio St. 376, at 391, 124 N.E. 212 [216]: 'It must be remembered that neither the state in the passage of general laws, nor the municipality in the passage of local laws, may make any regulations which are unreasonable. The means adopted must be suitable to the ends in view, they must be impartial in operation, and not unduly oppressive upon individuals, must have a real and substantial relation to their

purpose, and must not interfere with private rights beyond the necessities of the situation.' "

{¶ 18} The third certified question is whether R.C. 4123.931 violates Section 16, Article I of the Ohio Constitution, which provides that every person, for an injury done, "shall have remedy by due course of law."

{¶ 19} In dealing with the constitutionality of various collateral-benefits-offset statutes under Section 16, Article I, this court has recognized that the state has a legitimate interest in preventing double recoveries. Thus, it is constitutionally permissible for the state to prevent a tort victim from recovering twice for the same item of loss or type of damage, once from the collateral source and again from the tortfeasor. However, we have also recognized that these kinds of statutes are not rationally related to their purpose where they operate to reduce a plaintiff's tort recovery irrespective of whether a double recovery has actually occurred. Thus, we have consistently and repeatedly held that due process permits deductions for collateral benefits only to the extent that the loss for which the collateral benefit compensates is actually included in the award. *McMullen v. Ohio State Univ. Hosp.* (2000), 88 Ohio St.3d 332, 341-344, 725 N.E.2d 1117, 1125-1127; *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 479-482, 715 N.E.2d 1062, 1088-1090; *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 652 N.E.2d 952; *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 633 N.E.2d 504.

{¶ 20} There is no valid justification for dispensing with these principles in determining the constitutionality of R.C. 4123.931. Like the collateral-benefits-offset statutes, the subrogation statute is aimed at preventing the tort victim from keeping a double recovery, the only conceptual difference being that the intended beneficiary is the statutory subrogee (*i.e.*, the collateral payor) rather than the tortfeasor. Thus, R.C. 4123.931 must also satisfy the constitutional requirement

that deductible or, in this case, subrogable or recoupable items be matched to those losses or types of damages that the claimant actually recovered from the tortfeasor.

{¶ 21} We are now confronted with similar determinative issues under Sections 16 and 19, Article I of the Ohio Constitution. Whether expressed in terms of the right to private property, remedy, or due process, the claimant-plaintiff has a constitutionally protected interest in his or her tort recovery to the extent that it does not duplicate the employer's or bureau's compensation outlay. Thus, if R.C. 4123.931 operates to take more of the claimant's tort recovery than is duplicative of the statutory subrogee's workers' compensation expenditures, then it is at once unreasonable, oppressive upon the claimant, partial, and unrelated to its own purpose.

{¶ 22} The following two provisions of the statute are called into question under Sections 16 and 19, Article I of the Ohio Constitution: (1) the portion of R.C. 4123.931(A) that gives the statutory subrogee a right of subrogation with respect to "estimated future values of compensation and medical benefits," and (2) the portion of R.C. 4123.931(D) providing that "[t]he entire amount of any settlement or compromise of an action or claim is subject to the subrogation right of a statutory subrogee, regardless of the manner in which the settlement or compromise is characterized. Any settlement or compromise that excludes the amount of compensation or medical benefits shall not preclude a statutory subrogee from enforcing its rights under this section."

A

Estimated Future Values

{¶ 23} By giving the subrogee a current collectible interest in estimated future expenditures, R.C. 4123.931(A) creates the conditions under which a prohibited taking may occur. This would happen in those situations where the amount of reimbursement for "estimated future values of compensation and medical benefits" proves to be substantially greater than the subrogee's eventual

compensation outlay. In other words, R.C. 4123.931(A) requires the claimant to reimburse the bureau or self-insuring employer for future benefits that the claimant may never receive. In that event, the statute operates not to prevent the claimant from keeping a double recovery but to provide the statutory subrogee with a windfall at the expense of the claimant's tort recovery.

{¶ 24} Contrary to the assertions of respondent, there are too many situations that can eventuate in this kind of taking, and they occur far too often, for the problem to be considered merely hypothetical. One such situation is described by *amicus curiae* Ohio Academy of Trial Lawyers as follows:

"A prime example of this [kind of taking] occurs in a wrongful death situation where the decedent leaves a surviving spouse—say, a woman in her thirties or forties. In such circumstances, the BWC or self-insured employer will calculate estimated future benefits based upon the amounts it expects to pay over the woman's life expectancy. However, if the woman remarries, she will cease to be entitled to workers' compensation benefits upon remarriage, with the exception that she will receive a lump sum payment at that time representing two additional years of benefits. R.C. 4123.59(B)(1). Thus, in those circumstances, if the subrogee has recovered estimated future benefits based upon the woman's life expectancy, and she remarries shortly thereafter, the statute endows the subrogee with an enormous windfall at the expense of the injured party."

{¶ 25} In fact, even the court in *Yoh v. Schlachter* (Mar. 17, 2000), Williams App. No. WM-99-008, unreported, 2000 WL 281748, upon which respondent relies heavily, was compelled to note as follows:

"With respect to appellant's taking issue, we note that there may exist a potential problem with respect to the 'estimated future values of compensation and medical benefits' aspect of R.C. 4123.931. For instance, OTC will receive in a lump sum the entire estimated future amount it is supposed to pay to appellant and her minor child. The statute, however, fails to specify what is to be done with any

12

remainder of this sum once OTC is no longer required to pay workers' compensation, such as, if appellant remarries or dies. The entire amount could be paid in the form of workers' compensation benefits, in which case there arguably would be no taking issue because the beneficiaries would have received the full amount of compensation and medical benefits to which they were entitled. However, if OTC's obligation to pay workers' compensation benefits expired with money still remaining in the pool of funds obtained through R.C. 4123.931, then OTC arguably would have a windfall if it was not required to release the remainder to appellant or her estate." *Id*. at 14.

{¶ 26} Because a claimant may die before his or her life expectancy, the amount collected by the subrogee for estimated future permanent total disability payments may far exceed the amount of such compensation actually received by the claimant. The same would hold true where any other type of ongoing statutory compensation, for whatever reason, is terminated earlier than was estimated for purposes of reimbursement. Indeed, any statutory benefit, anticipated for purposes of reimbursement, may be denied or unrealized.

{¶ 27} In defending the estimated-future-values provision of R.C. 4123.931(A), respondent quotes various passages from *Wilken v. Internatl. Harvester Co.* (Minn.1985), 363 N.W.2d 763, and *Kempa v. E.W. Coons Co.* (Minn.1985), 370 N.W.2d 414, which, as appearing on the pages of respondent's brief, seem to suggest that estimating future workers' compensation benefits in a subrogation claim is tantamount to estimating future damages in a tort claim, and that the disadvantage of imprecise estimates must yield to the advantages of a final one-time resolution of the subrogation claim. Respondent argues that "[t]hese same principles apply in Ohio," and thus the estimated-future-values provision of R.C. 4123.931(A) is reasonable and constitutionally valid.

{¶ 28} Upon closer examination, however, it becomes apparent that *Wilken* and *Kempa* do not support R.C. 4123.931(A)'s constitutionality. First, neither of

these cases involves any constitutional issue whatsoever, let alone those addressed in *Direct Plumbing Supply Co., McMullen, Sheward, Buchman,* and *Sorrell.*

{¶ 29} Second, the Minnesota cases have nothing to do with the subrogation rights of employer and employee *inter se*. Instead, they involve issues of contribution and subrogation between the tortfeasor and the employer that have no effect on claimant's tort recovery. In fact, the employee in *Kempa* actually settled his claims against the tortfeasor exclusive and not duplicative of workers' compensation benefits paid or to be paid by his employer, which is a third-party procedural mechanism expressly forbidden under R.C. 4123.931(D).

{¶ 30} Third, the issue of estimating future workers' compensation obligations never arises between the Minnesota claimant and his or her employer, or the fund. This is because Minn.Stat. 176.061(6) does not give the employer or the fund any immediate right of subrogation or reimbursement with regard to future payable compensation or medical benefits. Instead, the Minnesota statute provides a formula under which the employer or fund can obtain reimbursement for compensation paid and then provides that certain remaining tort proceeds *shall be paid to the employee* and constitute a *credit* to the subrogee against future compensation payments.

{¶ 31} The Minnesota cases aside, we cannot accept the hypothesis that the constitutional infirmities inherent in R.C. 4123.931(A) can be justified by a presumed state interest in providing for a "final resolution." Contrary to respondent's assessment, R.C. 4123.931(A) does not provide for a final resolution similar to the tort verdict. The application of the estimated-future-values provision of R.C. 4123.931(A) does not, like the tort verdict, finally determine the rights and obligations of the affected parties. Despite the application of R.C. 4123.931(A), the subrogee remains under a continuing obligation to pay future compensation and medical benefits to the claimant, the claimant continues to be entitled to receive those payments as his or her rights accrue, and these rights and obligations still

remain to be determined and administered. The only "final resolution" achieved by R.C. 4123.931(A) is to provide immediate recovery to the subrogee by imposing the risk of liability for overestimated future expenditures upon the claimant. But the claimant is not a wrongdoer, and has not, in any legal or moral sense, caused harm to the subrogee. Indeed, the subrogee's loss is based entirely upon compensation it owes to the injured claimant. Thus, unlike the tortfeasor, the claimant is innocent; and it is irrational and arbitrary to impose this kind of risk upon an innocent party, especially when a full (and more accurate) reimbursement can be obtained by simply giving the subrogee the same kind of offset or credit against future payments that has always been used to recoup overpayments of compensation. See R.C. 4123.511(J); *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149.

B

Settlements

{¶ 32} R.C. 4123.931(D) establishes a procedural framework under which an unconstitutional taking of the claimant's property or a denial of remedy by due course of law can occur. This framework distinguishes between third-party claims that are tried and third-party claims that are settled. In the case where an award or judgment is rendered in the third-party action, R.C. 4123.931(D) allows the claimant to obtain jury interrogatories segregating damages that do not represent workers' compensation or medical benefits and, therefore, are not subject to the reimbursement right of the statutory subrogee. In contrast, the entire amount of any settlement or compromise is deemed subject to the reimbursement right of the statutory subrogee, and the claimant is precluded, under any circumstances, from showing that his or her settlement or portions thereof do not represent or duplicate workers' compensation or medical benefits.

{¶ 33} The problem with this procedure is that it assumes that settlements are always reached with third-party defendants who possess sufficient wealth or

insurance to satisfy the claimant's actual total damages and thus that the retention of the settlement proceeds and workers' compensation would result in a double recovery. However, this assumption proves false in those situations where the claimant is forced to settle his or her tort claim for the limits of an insurance policy and the combined amount of the insurance proceeds and workers' compensation benefits is insufficient to cover all of the claimant's actual loss. It can hardly be said that a double recovery results where a tort victim is allowed to retain two recoveries that, when combined, still do not make him or her whole. Indeed, in some situations the available insurance may not even be sufficient to cover the subrogee's interest, in which case the entire amount of the settlement will be taken by the subrogee. R.C. 4123.931(D) operates unconstitutionally in these situations because it allows for reimbursement from proceeds that do not constitute a double recovery.

{¶ 34} Again, contrary to respondent's assertions, this situation cannot be considered merely hypothetical. Indeed, we need look no further than *In re Estate of Ross* (1997), 116 Ohio App.3d 402, 688 N.E.2d 303, for an illustration. James Ross was killed in a motor vehicle accident during the course of, and arising out of, his employment with appellee Wendy's. His surviving spouse, appellant RaShell Ross, and two minor children, Joshua and James Ross, filed an application for death benefits pursuant to R.C. 4123.59. Wendy's, a self-insured employer, certified the claim and began paying death benefits at a rate of $493 per week.

{¶ 35} Appellant then filed a wrongful death claim against the tortfeasor, James Horn, who was insured by Trinity Universal Insurance Company. Appellant settled with Horn and Trinity for Horn's liability limits of $100,000. Wendy's and appellee Kemper Risk Management Services asserted Wendy's subrogation rights pursuant to R.C. 4123.931. The settlement proceeds were distributed as follows: payment of attorney fees, expenses, and court costs first, and the remaining balance of $64,906.85 to appellees. The decedent's wife and two minor children received

nothing out of the settlement, serving merely as collection agents for the statutory subrogee.

{¶ 36} The Third District Court of Appeals upheld the constitutionality of the statute under Section 19, Article I, ruling that R.C. 4123.931 does not constitute a taking of any property right in this situation because "[t]he statute merely allows the employer to be reimbursed for the benefits paid by the employer to an employee as a result of the third-party tortfeasor's tortious conduct. The employee is not deprived of adequate compensation for any injury suffered, as the benefits received by the employee under the workers' compensation laws are not diminished by the operation of R.C. 4123.931. Moreover, the statute allows the employee to retain any portion of the settlement or award greater than the employer's reimbursement expenses." *Id.*, 116 Ohio App.3d at 406-407, 688 N.E.2d at 306.

{¶ 37} The theory that the subrogating employer takes only the tortfeasor's money is offensive in the situation where the third-party recovery is no greater than the employer's compensation outlay. Reimbursement must be preceded by a double recovery for the statute to operate constitutionally. It is spurious to say that these tort victims were not deprived of adequate compensation because they still get to keep workers' compensation benefits. Workers' compensation laws are not intended to provide a full recovery, and they are not designed to restore injured workers or their families to what they lost. See *Blankenship, supra*, 69 Ohio St.2d at 614, 23 O.O.3d at 508, 433 N.E.2d at 577; *Indus. Comm. v. Drake* (1921), 103 Ohio St. 628, 635, 134 N.E. 465, 467. And it is pure sophistry to argue that claimants who are staring at an empty coffer get to keep the unreimbursed portion of their settlement.

{¶ 38} Moreover, if the decedent in *Ross* had been survived not only by his wife and two minor children, but also by his parents, an adult child, and siblings, the statute would operate to extinguish their recovery as well. However, these persons, who are beneficiaries for purposes of a wrongful death action, are not

workers' compensation claimants and do not qualify for workers' compensation benefits. Compare R.C. 2125.02(A)(1) with R.C. 4123.59 and 4123.60. In this situation, the statute operates unconstitutionally to allow one person's tort recovery to be reduced or extinguished by another person's workers' compensation benefits. See *McMullen, supra*, 88 Ohio St.3d at 343, 725 N.E.2d at 1126.

{¶ 39} While it may be accurate to say that R.C. 4123.931, in its effort to reimburse the employer or bureau for its outlay of compensation, always leaves the injured worker with the full measure of compensation and benefits to which he or she is entitled under the Workers' Compensation Act, this fact alone does not automatically determine R.C. 4123.931's constitutionality. What must be considered, and what the court in *Ross* failed to consider, is that a person who receives injuries in the course of employment as a proximate result of a third party's negligent act or omission possesses certain constitutionally protected rights of recovery beyond those provided in the workers' compensation statutes and that those rights are not necessarily preserved by statutory workers' compensation benefits.

{¶ 40} Yet these are the very arguments raised by respondent and its supporting *amici* in defense of R.C. 4123.931(D), with one addition. Respondent argues that there is no "absolute right to settle regardless of the rights of other interested parties." When settling with a third-party tortfeasor, plaintiffs must be aware that "the entire settlement award is subject to the right of the subrogee.   *  *  *  * Therefore, if the parties involved do not wish to lose certain rights due to settlement, they can opt to proceed to trial and submit interrogatories to the jury [in order to designate the types of damages awarded]."

{¶ 41} However, respondent adds nothing to the analysis by invoking the platitude that there is no "absolute" right to settle. If a right had to be absolute before it could be vindicated, virtually all rights would be worthless. Absolute or not, this court has never tolerated an "illegal restriction upon the right to

compromise." *Davy v. Fid. & Cas. Ins. Co.* (1908), 78 Ohio St. 256, 270, 85 N.E. 504, 507. " '[T]he law of Ohio will tolerate no lien in or out of the profession, as a general rule, which will prevent litigants from compromising, or settling their controversies, or which, in its tendencies, encourages, promotes or extends litigation.' " *Id.,* 78 Ohio St. at 268-269, 85 N.E. at 507, quoting *Weakly v. Hall* (1844), 13 Ohio 167, 175, 1844 WL 22. Indeed, settlement is part of the essential core of our judicial process. It finds expression in Civ.R. 16, which specifically recognizes that one objective of pretrial procedure is to facilitate "[t]he possibility of settlement of the action"; in R.C. 1343.03(C), which imposes prejudgment interest upon a party who fails "to make a good faith effort to settle the case"; and in *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 426, 674 N.E.2d 1164, 1169, where the court unanimously rejected a strict "but for" test in legal malpractice cases, partially on the basis that it " 'ignores settlement opportunities lost' " and tends to " 'exclude evidence about settlement, * * * the most common form of client recovery,' " quoting Note, The Standard of Proof of Causation in Legal Malpractice Cases (1978), 63 Cornell L.Rev. 666, 670.

{¶ 42} Nor is it very meaningful to argue that plaintiffs who are faced with the prospect of settling for policy limits in these situations can opt for a trial of the third-party action and obtain jury interrogatories to designate the types of damages awarded. Trying the tort case in order to have damages designated does not obviate the problem in these situations. Despite any allocation of damages, the claimant's tort recovery is still fixed by the insurance policy limits, the combined amount of those limits and workers' compensation is still insufficient to cover the claimant's actual total loss, and there is still no double recovery to justify a right of subrogation to any of the insurance proceeds. The only result of trying the tort claim in these situations would be to clutter the trial court's docket with unnecessary litigation that serves only to eat away at the finite amount of available recovery.

**{¶ 43}** Thus, none of the theories advanced by respondent or supporting *amici* changes the fact that under certain familiar conditions, R.C. 4123.931 operates to take away or reduce the claimant's tort recovery irrespective of whether a double recovery has actually occurred.

C

Propriety of Considering Additional Situations

**{¶ 44}** Respondent has urged us not to address the arguments raised by petitioners and supporting *amicus* regarding R.C. 4123.931(A) and (D), as they are based on "several hypothetical fact patterns, which have no bearing on the resolution of the matter pending before the federal court." We disagree, for several reasons.

**{¶ 45}** First, respondent argued in its preliminary memorandum that this court should address all eight certified questions in this case because "many cases will be resolved and judicial economy will be promoted." In so doing, the bureau represented as follows:

"[T]he present case is only one of numerous recent cases challenging the constitutionality of the subrogation provisions found in R.C. 4123.931. The [bureau] is aware of approximately fifty such cases in twenty-two counties and two federal district courts. Approximately seven of these cases were appealed to courts of appeals in the second, third, sixth, eighth, and ninth Ohio appellate districts. Several of the cases (in both common pleas courts and in the courts of appeals) have now been settled, but most remain pending, including three cases before the eighth and ninth district courts of appeals."

**{¶ 46}** It would be more than a bit anomalous to now limit our consideration of R.C. 4123.931's constitutionality to the present certified facts.

**{¶ 47}** Second, after respondent's merit brief was filed in this cause, this court allowed discretionary appeals in *Yoh, supra*, and in *In re Estate of Stewart* (June 28, 2000), Lorain App. No. 99CA007422, unreported, 2000 WL 840512.

Collectively, these cases embody all of the issues and factual situations that respondent urges us not to consider. Yet in both cases, the court has ordered that briefing be stayed and the cause held for the decision in this case. See (2000), 89 Ohio St.3d 1490, 734 N.E.2d 377; (2000), 90 Ohio St.3d 1471, 738 N.E.2d 383. That is, *Yoh* and *Stewart* are poised to be decided upon the authority of the decision in this case. Thus, as it stands now, if we did as respondent suggests, this court could uphold the constitutionality of the statute as applied in situations that we declined to consider.

{¶ 48} It may be argued that the court can nevertheless decline to consider additional factual situations in this case, then lift the stay on briefing in *Yoh* and *Stewart* and hear those cases on the merits. But this approach would produce an absurd result. Assuming that a refusal to consider additional factual situations in this case would result in a decision in favor of constitutionality, that decision would stand only so long as it took us to reverse it in *Yoh* and *Stewart*.

{¶ 49} Finally, the consideration of additional situations is particularly warranted in judging the constitutionality of R.C. 4123.931 because it is the statute itself that creates those situations by virtue of its classifications and presumptions. Otherwise, there would be no way to determine whether the statute is reasonable or rationally related to its presumed constitutional goal of preventing claimants from collecting and keeping a double recovery. Moreover, the situations considered above are not merely speculative factual scenarios that may or may not arise at some future time but are instead familiar and repeated circumstances that necessarily arise by virtue of the interplay between the common law and the workers' compensation statutes. In addition, the district court has certified this cause to us without any knowledge as to what situations relevant to the application of the statute will arise after trial. Thus, the federal court is actually asking us to evaluate the constitutionality of R.C. 4123.931 under the various situations that may arise in this case.

**{¶ 50}** Thus, we find it absolutely essential to a determination of R.C. 4123.931's constitutionality that the court consider how the statute operates in the situations described above.

**{¶ 51}** Accordingly, for all of the foregoing reasons, we answer certified questions two and three in the affirmative and hold that R.C. 4123.931 violates Sections 16 and 19, Article I of the Ohio Constitution.

III

Section 28, Article II—The Compromise Revisited

**{¶ 52}** The fourth certified question is whether R.C. 4123.931 violates Section 28, Article II of the Ohio Constitution, which provides that "[t]he general assembly shall have no power to pass * * * laws impairing the obligation of contracts."

**{¶ 53}** This is essentially the same challenge that was made under Section 35, Article II, but dressed in contractual attire. The gist of the challenge is that the workers' compensation bargain as reflected in R.C. Chapter 4123 constitutes contractual legislation that cannot be impaired. However, this challenge fails for the same reasons already stated with regard to Section 35, Article II.

**{¶ 54}** Accordingly, we answer the fourth certified issue in the negative and hold that R.C. 4123.931 does not violate Section 28, Article II of the Ohio Constitution.

IV

Section 2, Article I—Reclassifying the Arguments

**{¶ 55}** The fifth certified question is whether R.C. 4123.931 violates Section 2, Article I of the Ohio Constitution, which provides that government is instituted for the "equal protection and benefit" of the people and that "no special privileges or immunities shall ever be granted."

**{¶ 56}** Petitioners argue that R.C. 4123.931 violates the Privileges and Immunities Clause because it allows employers to recover all of their workers' compensation expenditures while continuing to enjoy immunity from suit. Thus, "the statute grants employers the special privilege of immunity from suit without having paid or provided consideration for it."

**{¶ 57}** Contrary to petitioners' assertion, however, the employer has provided consideration for its immunity from suit by paying workers' compensation benefits; and the theory that subrogation is intrinsically antithetical to the workers' compensation system lacks merit here as well.

**{¶ 58}** Petitioners also argue that R.C. 4123.931(D) creates arbitrary classifications and, therefore, violates the Equal Protection Clause. Under an equal protection analysis, the challenged statute will be upheld if the classification bears a rational relationship to a legitimate governmental interest or if reasonable grounds exist for drawing the distinction. See *State ex rel. Patterson v. Indus. Comm.* (1996), 77 Ohio St.3d 201, 205, 672 N.E.2d 1008, 1011; *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 447, 613 N.E.2d 574, 577.

**{¶ 59}** First, petitioners maintain that the statute creates "arbitrary classifications of tort victims—employees injured on the job and employees injured off the job. The subrogation statute creates a presumption against the former by mandating that the 'entire amount of any award or judgment is presumed to represent compensation * * * subject to a statutory subrogee's subrogation rights.'

" According to petitioners, "[t]he strict scrutiny test is appropriate here because the fundamental rights of access to Ohio workers' comp system and access to Ohio's civil justice system are clearly at stake."

{¶ 60} The problem with this argument is that it assumes too much. Since R.C. 4123.931 guarantees full workers' compensation in all cases, the right of access to the workers' compensation system is not implicated. Nor does this classification implicate the right of access to Ohio's civil justice system. The presumption created in the case of awards or judgments can be rebutted by "jury interrogatories indicating that the award or judgment represents different types of damages." In providing the claimant with the means to segregate damages that do not duplicate workers' compensation benefits, R.C. 4123.931(D) avoids offending the claimant's rights to remedy, due process, and private property. Thus, in drawing a distinction between workers' compensation claimants and other tort victims, the statute does not involve any fundamental right.

{¶ 61} In this context, it can hardly be said that tort victims who are injured "on the job" or, more appropriately, in the course of and arising out of their employment, are similarly situated to tort victims who are injured "off the job" or, more precisely, who do not receive an injury in the course of and arising out of their employment. The former tort victim recovers compensation and medical benefits under the Workers' Compensation Act; the latter does not. Contrary to the assertions of Ohio Academy of Trial Lawyers, equal protection does not require the General Assembly to pass a valid collateral-benefits-offset statute covering tort claims in general before it can enact a workers' compensation subrogation statute. Accordingly, we reject petitioners' first equal protection argument.

{¶ 62} Petitioners' second equal protection argument is that R.C. 4123.931(D) arbitrarily distinguishes between claimants who proceed to trial on their tort claims and claimants who settle their tort claims. Petitioners argue that claimants who settle receive less favorable treatment because, unlike claimants who

try their tort claims, they are precluded from showing that their tort recovery or portions thereof do not duplicate workers' compensation benefits and, therefore, do not represent a double recovery. Thus, while claimants who go to trial "may have some portion of their award excluded from the subrogee's right of reimbursement, the injured employees who settle their claims * * * have no comparable method or opportunity to shield a portion of their damages from the subrogee." We agree.

{¶ 63} R.C. 4123.931(D) essentially creates a presumption that a double recovery occurs whenever a claimant is permitted to retain workers' compensation and tort recovery. Claimants who try their tort claims are permitted to rebut this presumption, while claimants who settle their tort claims are not. Such disparate treatment of claimants who settle their tort claims is irrational and arbitrary because, as demonstrated in Part II above, there are situations where claimants' tort recovery is necessarily limited to amounts that if retained along with workers' compensation cannot possibly result in a double recovery.

{¶ 64} Contrary to respondent's assertions, these claimants are not free to make the decision to proceed to trial or to settle. Their only freedom is to choose the mechanism by which to forfeit their rights to property and remedy. And in those situations where claimants are forced to settle for amounts that are insufficient to satisfy more than the subrogee's claim, as happened in *Ross, supra*, their only freedom is to have their tort recovery obliterated.

{¶ 65} Respondent further argues that "R.C. 4123.931 is a rational response to a legitimate state concern to minimize the loss to the workers' compensation fund caused by the wrongful actions of a third-party tortfeasor." However, this concern justifies the statute only so far as the statute operates to assess the subrogee's loss against the tortfeasor. But when the statute operates irrespectively of whether a double recovery has occurred, it can no longer be said that the fund is being replenished at the tortfeasor's expense. The state's interest in conserving the fund can no more justify the denial of a claimant's nonduplicative tort recovery

than it can serve as a viable basis for denying workers' compensation benefits to those entitled to it. See *State ex rel. Nyitray v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 177, 2 OBR 715, 718-719, 443 N.E.2d 962, 966.

{¶ 66} Finally, several *amici* in support of respondent argue that distinguishing between settlements and trial "is also rational because settling parties will rarely, if ever, allocate a settlement to lost wages, medical expenses and pain and suffering." The corollary to this argument is that the distinction may be a rational method to preclude collusive settlements. However, there is no purpose to allocating damages in the absence of a double recovery and, in these situations, it is difficult to conceive how collusion could occur, unless the tortfeasor's financial and insurance coverage decisions were somehow made in collaboration with the claimant.

{¶ 67} Accordingly, we answer the fifth certified question in the affirmative and hold that R.C. 4123.931 violates the Equal Protection Clause of Section 2, Article I of the Ohio Constitution to the extent that it distinguishes between claimants who try their tort claims and claimants who settle their tort claims.

V

Section 15, Article II—One Subject

{¶ 68} The sixth certified question is whether R.C. 4123.931 violates Section 15, Article II of the Ohio Constitution. Specifically, petitioners claim that R.C. 4123.931 violates Section 15(D), Article II, which provides that "[n]o bill shall contain more than one subject."

{¶ 69} 1995 Am.Sub.H.B. No. 278, which enacted R.C. 4123.93 and 4123.931, comes nowhere close to violating the one-subject rule. In addition to enacting these new sections, Am.Sub.H.B. No. 278 amended four sections of R.C. Chapters 4121 and 4123 and made appropriations for the bureau for the biennium beginning July 1, 1995, and ending June 30, 1997. 146 Ohio Laws, Part II, 3581.

The bill contains one subject, and only one subject—workers' compensation. There is no disunity of subject matter.

{¶ 70} Accordingly, we answer the sixth certified question in the negative and hold that R.C. 4123.931, or more appropriately, Am.Sub.H.B. No. 278, does not violate Section 15(D), Article II of the Ohio Constitution.

## VI

### Civ.R. 49(C)—Special Verdict

{¶ 71} The seventh certified question is whether R.C. 4123.931 is contrary to Civ.R. 49(C) and, therefore, invalid and unenforceable.

{¶ 72} In an effort to provide the claimant with the means to rebut the presumption that the entire amount of any third-party award or judgment represents workers' compensation, R.C. 4123.931(D) allows the use of "a special verdict or jury interrogatories" to segregate different types of damages. However, Civ.R. 49(C) provides, to the contrary, that "[s]pecial verdicts shall not be used." Thus, to this extent R.C. 4123.931 is contrary to Civ.R. 49(C) and the latter must control. See *Rockey v. 84 Lumber Co.* (1993), 66 Ohio St.3d 221, 611 N.E.2d 789, paragraph two of the syllabus.

{¶ 73} However, this certainly does not render the entire statute invalid and unenforceable, nor does it cause the provision of R.C. 4123.931(D) for classifying damages to become inoperative. The provision can still operate without the use of a special verdict, since it also provides for the use of special interrogatories.

{¶ 74} Accordingly, we answer the seventh certified issue in the negative and hold that while R.C. 4123.931 is contrary to Civ.R. 49(C) to the extent that it provides for the use of a special verdict, no part of the statute is thereby rendered invalid or unenforceable.

## VII

### R.C. 4123.80—Waiver of Compensation

**{¶ 75}** The eighth and final certified question is whether R.C. 4123.931 constitutes an invalid waiver of an injured employee's right to receive and retain workers' compensation benefits in violation of R.C. 4123.80.

**{¶ 76}** R.C. 4123.80 provides that "[n]o agreement by an employee to waive his rights to compensation under this chapter is valid." Petitioners argue that R.C. 4123.931 forces the employee who pursues a third-party claim to pay back his or her workers' compensation benefits and, therefore, constitutes an invalid waiver under R.C. 4123.80.

**{¶ 77}** This is the same argument that was used in an attempt to invalidate the very concept of a workers' compensation subrogation statute under Sections 28 and 35, Article II of the Ohio Constitution, and it fails once again for the same reasons. In no event does R.C. 4123.931 ever cause the claimant to end up with less than the full amount of workers' compensation benefits to which he or she is entitled under R.C. Chapter 4123. The statute may be construed as imposing an obligation upon an injured employee to waive his or her right to tort compensation, but it never causes the injured employee to relinquish any right to workers' compensation.

**{¶ 78}** Accordingly, we answer the eighth certified question in the negative and hold that R.C. 4123.931 does not constitute an invalid waiver of an injured employee's right to receive and retain workers' compensation benefits in violation of R.C. 4123.80.

VIII

Conclusion

**{¶ 79}** We hold that R.C. 4123.931 does not violate Sections 15, 28, or 35, Article II of the Ohio Constitution, is not rendered invalid by Civ.R. 49(C), and does not constitute an invalid waiver under R.C. 4123.80. We hold, however, that R.C. 4123.931 does violate Sections 2, 16, and 19, Article I of the Ohio Constitution. In so holding, we do not accept the proposition that a workers' compensation subrogation statute is *per se* unconstitutional, and nothing in this opinion shall be construed to prevent the General Assembly from ever enacting such a statute. We hold only that R.C. 4123.931, in its present form, is unconstitutional.

**{¶ 80}** Accordingly, we advise the federal court that R.C. 4123.931 is unconstitutional under Ohio law.

*Judgment accordingly.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**MOYER, C.J., dissenting.**

**{¶ 81}** "The courts must declare the sense of the law; and if they should be disposed to exercise will instead of judgment, the consequence would equally be the substitution of their pleasure to that of the legislative body." The Federalist No. 78 (Alexander Hamilton) (Clinton Rossiter Ed. 1961) 468-469.

**{¶ 82}** The principle that courts are not the creators of public policy and should not decide cases based on disagreement with a legislature has guided courts since the creation of the American judicial system.

**{¶ 83}** This court has adhered to the view. See *State ex rel. Bowman v. Allen Cty. Bd. of Commrs.* (1931), 124 Ohio St. 174, 196, 177 N.E. 271, 278; *State ex rel. Bishop v. Mt. Orab Village School Dist. Bd. of Edn.* (1942), 139 Ohio St.

427, 438, 22 O.O. 494, 498, 40 N.E.2d 913, 919; *State v. Warner* (1990), 55 Ohio St.3d 31, 43, 564 N.E.2d 18, 30-31; *Cent. Motors Corp. v. Pepper Pike* (1995), 73 Ohio St.3d 581, 584, 653 N.E.2d 639, 642-643; *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323, 328.

{¶ 84} The majority's determination that R.C. 4123.931 violates Sections 2, 16, and 19, Article I, appears to derive from its disagreement with the substance of the legislation. The reasons stated for declaring the statute unconstitutional are generally policy arguments, not principles of constitutional law. The majority disregards the principle so cogently stated by Justice Harlan Stone in his dissent in *United States v. Butler*. He cautioned that "the only check upon our own exercise of power is our own sense of self-restraint. For the removal of unwise laws from the statute books appeal lies, not to the courts, but to the ballot and to the processes of democratic government." *United States v. Butler* (1936), 297 U.S. 1, 79, 56 S.Ct. 312, 325, 80 L.Ed. 477, 495.

{¶ 85} As I wrote in *DeRolph II*, "constitutional history, precedent, and logic warrant the conclusion that [these types of] qualitative judgments should be committed to the will of the people as expressed in the election of representatives to the General Assembly." *DeRolph v. State* (2000), 89 Ohio St.3d 1, 48, 728 N.E.2d 993, 1029 (Moyer, C.J., dissenting).

{¶ 86} Our role here is to determine whether R.C. 4123.931 violates the Ohio Constitution, not to determine whether R.C. 4123.931 represents the policy decision that we would have chosen were we legislators.

## I. Sections 16 and 19, Article I, Ohio Constitution

{¶ 87} The majority holds that because R.C. 4123.931 "operates to take more of the claimant's tort recovery than is duplicative of the statutory subrogee's workers' compensation expenditures," it is impermissibly "unreasonable, oppressive upon the claimant, partial, and unrelated to its own purpose." Specifically, the majority holds that R.C. 4123.931 "creates the conditions under

which a prohibited taking may occur" when R.C. 4123.931(A) gives the statutory subrogee the right of subrogation with respect to "estimated future values of compensation and medical benefits." I disagree.

{¶ 88} The majority argues that the employee is unconstitutionally required to reimburse the Bureau of Workers' Compensation or the self-insured employer for future benefits that the employee may never receive. For instance, an injured employee may die before benefits equaling the subrogation amount have been received. It is also suggested that the surviving spouse may remarry, at which point he or she is entitled to a lump-sum payment representing two additional years of benefits, but, under workers' compensation law, is not entitled to further benefits. R.C. 4123.59(B). Because of this potential inequity, the majority holds that because the General Assembly did not include an offset or credit against future payments in the subrogation scheme, R.C. 4123.931 unconstitutionally represents a taking and denial of a remedy in violation of Sections 16 and 19, Article I.

{¶ 89} It is true that an employee may die before benefits equaling the subrogation amount have been received. However, it is also true that an employee may live far beyond his or her life expectancy as determined by the court in estimating those future benefits. The estimated future values are the amount of compensation and medical benefits reasonably projected to be paid in the claim by the subrogee as a result of the actions of the tortfeasor. The court in determining these values hears evidence from both the claimant and the subrogee, and may reject the subrogee's projections if it finds them not well supported.

{¶ 90} This method of calculation of estimated future values is similar to the concept of future damages in a typical personal injury claim. Courts routinely estimate the value of future payments in these cases, aided by expert testimony, mortality tables, and formulas for reducing future payments to present value. Ohio Jury Instructions currently provides for estimating future values regarding earnings, 1 Ohio Jury Instructions (1996), Section 23.20, present value of future damage, 1

Ohio Jury Instructions (1996), Section 23.77, and damages relating to permit injury and death, 1 Ohio Jury Instructions (1996), Sections 23.90 through 23.91. In addition, jurors are provided with mortality tables to determine "the probable normal length of life of the decedent." 1 Ohio Jury Instructions (1996), Section 23.76. Jurors are empowered to make these types of determinations in numerous situations.

{¶ 91} The future values of workers' compensation benefits can be calculated with more certainty than the typical personal injury claim, since an injured employee's rate of compensation is computed according to a statutorily set scheme. R.C. 4123.61. Therefore, like the tort verdict, the subrogation amount for future benefits is based on reasonable assumptions that, although inherently uncertain, provide for a final resolution.

{¶ 92} The majority contends that this final resolution is neither final nor enough to justify the constitutional infirmities of R.C. 4123.931. This argument misses the point. The fact that the subrogee continues to administer benefits does not, as the majority finds, make the goal of a final resolution invalid. While the subrogee may eventually pay out greater or fewer benefits to the claimant than the court determined was reasonable at the time of the lawsuit, the procedure of a one-time payment to the subrogee is reasonable. The Constitution does not demand a method of calculation that results in a perfect and exact determination, only a reasonable one. The credit system is also a reasonable method. However, we are not empowered to choose between reasonable methods. Our authority extends only to determining whether the method chosen by the General Assembly is clearly unconstitutional. *Desenco, Inc. v. Akron*, 84 Ohio St.3d at 538, 706 N.E.2d at 328. This is a reasonable method of calculation and not clearly unconstitutional beyond a reasonable doubt. Therefore, I would hold that R.C. 4123.931 does not violate Sections 16 or 19, Article I of the Ohio Constitution.

II. Section 2, Article I, Ohio Constitution

{¶ 93} The majority holds that R.C. 4213.931(D) violates Section 2, Article I of the Ohio Constitution because although claimants who opt for trial can request jury interrogatories, claimants who opt for settlement " 'have no comparable method or opportunity to shield a portion of their damages from the subrogee,' " quoting the petitioners' brief. My disagreement with this holding is analogous to my concerns raised regarding the court's role in determining the constitutionality of a statute and relates to the same fundamental difference between my view of that role and the view of the majority. Again, I disagree.

{¶ 94} Injured employees are not a suspect class. *State v. Williams* (2000), 88 Ohio St.3d 513, 530, 728 N.E.2d 342, 359. Nor does R.C. 4123.931 implicate a fundamental constitutional right. *Id.* Accordingly, we evaluate R.C. 4123.931 using a rational-basis analysis. *Id.*

{¶ 95} As stated previously, the workers' compensation scheme relies on compulsory contributions by employers to a statewide fund. Injured employees and their beneficiaries are paid workers' compensation benefits from this fund. Prior to adoption of R.C. 4123.931, employees injured by the wrongful actions of a third-party tortfeasor could recover damages from third-party tortfeasors and receive compensation benefits from the Workers' Compensation Fund. R.C. 4123.931 was enacted to preserve the Workers' Compensation Fund. A rational-basis analysis requires us to uphold this remedy "unless it constitutes a plain affront to a specific provision of the Constitution." *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 61, 717 N.E.2d 286, 292. Accordingly, we must analyze the Holetons' equal protection arguments to determine whether R.C. 4123.931 constitutes such an affront to Section 2, Article I.

{¶ 96} R.C. 4123.931 affects no fundamental right of an employee. If an employee is dissatisfied with settlement policies, the employee may proceed with a jury trial. R.C. 4123.931 does not force employees to litigate. Instead, like all

claimants, injured employees are free to decide whether to proceed to trial or to settle. Each process has its own advantages and disadvantages, and the employee must decide whether to submit his or her claim to a trial that would determine the portion of the award that should be shielded from subrogation, or to settle with the tortfeasor, taking into consideration that the settlement amount will be subject to subrogation.

**{¶ 97}** Without the restriction regarding settlement awards in R.C. 4123.931(D), employees could accept a lower settlement amount from the tortfeasor, in exchange for an agreement stating that the entire amount was not subject to subrogation. In according only those employees who choose a trial the right to ask the jury to determine what portion of the award should be shielded, the General Assembly could have rationally conceived that this was a method to preclude collusive settlements. Although the majority argues that it is difficult to anticipate how these would occur, the situation is no more hypothetical than the many hypothetical situations the majority claims could result in subrogation without double recovery.

**{¶ 98}** Even more important, legislation aimed at preventing collusive settlements that would prevent a statutory subrogee from being reimbursed is a reasonable use of legislative power, especially when the legislation is aimed at preserving the integrity of the State Fund for the benefit of all workers' compensation claimants. Accordingly, I would hold that R.C. 4123.931 does not violate Section 2, Article I of the Ohio Constitution.

## III. Conclusion

**{¶ 99}** For the forgoing reasons, I would answer the certified questions by advising the United States District Court for the Northern District of Ohio that R.C. 4123.931 does not violate Sections 2, 16, or 19, Article I.

COOK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

_____

**COOK, J., dissenting.**

{¶ 100} Like the Chief Justice, I would answer "no" to each certified question. And I agree with much of what the Chief Justice expresses in his dissenting opinion. I write separately to address the majority's unfortunate decision to declare R.C. 4123.931 unconstitutional on its face for violating the Takings and Right to Remedy Clauses of the Ohio Constitution.

{¶ 101} A party may challenge a statute as unconstitutional either on its face or as applied to a particular state of facts. *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph four of the syllabus. The effect of a successful challenge will differ depending on whether the court strikes the statute on its face or as applied. "If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances." *Women's Med. Professional Corp. v. Voinovich* (C.A.6, 1997), 130 F.3d 187, 193. This case necessarily presents a facial challenge to R.C. 4123.931. Because there has been no verdict or settlement to which the statute has been applied, this case presents no set of facts upon which we can base an as-applied constitutional analysis. See *State v. Beckley* (1983), 5 Ohio St.3d 4, 6-7, 5 OBR 66, 68-69, 448 N.E.2d 1147, 1148-1149 (constitutional challenge had to be a facial one when there was no "presently existing state of facts to which to apply the challenged statutes").

{¶ 102} The majority fails to appreciate the distinction between facial and as-applied constitutional challenges. Because the majority deems R.C. 4123.931 unpalatable when applied to various factual scenarios not presented in this case, the majority declares the statute unconstitutional on its face. As noted above, this decision precludes future application of the statute under any circumstances. But the majority's approach fails to acknowledge important precepts that are supposed

to guide an analysis of facial challenges. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid * * *." *United States v. Salerno* (1987), 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697, 707; see, also, *Emerson Elec. Co. v. Tracy* (2000), 90 Ohio St.3d 157, 162, 735 N.E.2d 445, 449-450 (Cook, J., dissenting). By ignoring this principle, the majority loses sight of "the strong presumption in favor of the constitutionality of legislation and the judicial obligation which exists to support the enactment of a lawmaking body if this can be done." *Beckley*, 5 Ohio St.3d at 7, 5 OBR at 69, 448 N.E.2d at 1149. Today's decision thus stands for the bizarre (and unsupportable) proposition that a court may declare a statute unconstitutional on its face simply because it may be applied unconstitutionally in some situations, under a set of facts not at bar.

{¶ 103} The majority goes to great lengths in defending its mode of analyzing the constitutionality of R.C. 4123.931 under the Takings and Right to Remedy Clauses. For example, the majority claims that it "would be more than a bit anomalous to now limit our consideration of R.C. 4123.931's constitutionality to the present certified facts" in light of the respondent's representations to this court that numerous pending cases may be resolved by our decision in this one. The majority also contends that the factual scenarios it considers in this case are "familiar and repeated circumstances that necessarily arise" from R.C. 4123.931's "interplay" with the common law. But these arguments are unresponsive to the mistake that the majority actually makes in its constitutional analysis.

{¶ 104} The majority's error is not the consideration of additional situations; indeed, when entertaining a facial challenge, the court necessarily considers how the statute may apply to a variety of circumstances. Rather, the

majority's mistake comes in considering *too few* additional situations before declaring the statute *facially* unconstitutional. Before we may strike the statute as facially unconstitutional, and therefore invalid *in toto*, we must do more than simply find that the statute operates unconstitutionally in *some* situations. See *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 494-497, 102 S.Ct. 1186, 1191-1193, 71 L.Ed.2d 362, 369-370. Finding a law facially unconstitutional requires us "to hold that under *no reasonable set of circumstances*" could the statute operate constitutionally. (Emphasis added.) *Beckley*, 5 Ohio St.3d at 7, 5 OBR at 69, 448 N.E.2d at 1149; see, also, *Salerno*, 481 U.S. at 745, 107 S.Ct. at 2100, 95 L.Ed.2d at 707. The majority's analysis falls far short of this exhaustive standard. Instead of striking R.C. 4123.931 because it violates the Right to Remedy and Takings Clauses in virtually all of its applications, the majority has instead voided the statute simply because it deems the law invalid under the limited circumstances it has chosen to address.

{¶ 105} The majority also justifies its departure from the proper mode of constitutional analysis by painting a misleading picture about how this court manages its docket. The majority notes that this court has allowed discretionary appeals in *Yoh v. Schlachter* (Mar. 17, 2000), Williams App. No. WM-99-008, unreported, 2000 WL 281748, and *In re Estate of Stewart* (June 28, 2000), Lorain App. No. 99CA007422, unreported, 2000 WL 840512. See (2000), 89 Ohio St.3d 1490, 734 N.E.2d 377, and (2000), 90 Ohio St.3d 1471, 738 N.E.2d 383. In both of these cases, this court *sua sponte* ordered the briefing schedules stayed and the causes "held" for the decision in this case. According to the majority, this means that these cases "are poised to be decided" summarily "upon the authority" of this case. Thus, the majority concludes that a decision upholding the facial constitutionality of R.C. 4123.931 could result in this court "uphold[ing] the constitutionality of the statute as applied in situations that we declined to consider." But this explanation is just plain wrong, for it is based on an inaccurate depiction

of how other cases currently pending before this court would be affected in the event that we upheld the facial validity of R.C. 4123.931 in this case.

{¶ 106} This court does not summarily decide *all* held causes when we have decided the case for which those causes are held. The disposition of a given case may not warrant summary disposition of causes held for it, particularly if the held causes present unique issues that are not addressed in the lead case. For example, this court ordered briefing in at least two recent cases that were originally held for dispositions in other cases. Compare *State v. Eppinger* (2000), 89 Ohio St.3d 1447, 731 N.E.2d 1136, and *Paton v. Paton* (2000), 89 Ohio St.3d 1436, 730 N.E.2d 990 (lifting stays on briefing), with *State v. Eppinger* (1999), 86 Ohio St.3d 1465, 715 N.E.2d 568, and *Paton v. Paton* (1999), 86 Ohio St.3d 1465, 715 N.E.2d 568 (holding causes for decisions in cases already pending before this court). In *Eppinger* and *Paton*, this court examined each case and found it inappropriate to decide them summarily, despite the fact that we had originally held them for other cases pending here. Similarly, if *Yoh* and *Stewart* present issues not adequately addressed by the decision in this case, this court would lift the stay on briefing and hear the cases on the merits. Thus, if the majority had (correctly) upheld the *facial* constitutionality of R.C. 4123.931, it would be inappropriate for this court to summarily decide *Yoh* and *Stewart* if those cases challenge the constitutionality of the statute *as applied* to the facts of those cases. We would instead order briefing on the merits and the parties would have the opportunity to focus their arguments on the as-applied challenges without having to address the facial challenges we have already decided here.

{¶ 107} The majority discounts this orderly (and correct) procedure by claiming that a supposedly "absurd result" would flow from it. The majority states, "Assuming that a refusal to consider additional factual situations in this case would result in a decision in favor of constitutionality, that decision would stand only so long as it took us to reverse it in *Yoh* and *Stewart*." But this assertion is woefully

wrong and further illuminates the majority's failure to distinguish between facial and as-applied constitutional challenges. If a majority of this court had (correctly) decided here that the statute was *not* facially unconstitutional, only to decide later that the statute *was* unconstitutional *as applied* to the situations presented in *Yoh* and *Stewart*, we would not "reverse" our decision in this case. The statute would merely be unenforceable as applied to the circumstances presented in those previously held cases; the statute would remain facially valid, meaning that the law could still be enforced in other circumstances where its operation would be constitutional. Simply put, a decision upholding the facial constitutionality of R.C. 4123.931 in this case would not preclude this court (or any other court for that matter) from finding the statute unconstitutional as applied to a particular set of facts in a later case.

{¶ 108} Finally, the majority contends that the district court, by certifying the constitutional questions, "is actually asking us to evaluate the constitutionality of R.C. 4123.931 under the various situations that may arise in this case." The majority says this is so because the district court is "without any knowledge" of what facts will arise after trial. But this explanation is curious, given that the certified questions dealing with constitutionality ask only abstract questions of whether R.C. 4123.931 is constitutional under various provisions of the Ohio Constitution. How the majority gleans the district court's desire to have us decide the constitutionality of the statute "under the various situations that may arise in this case" is anyone's guess. It is more likely, given the general phrasing of the certified constitutional questions, that the district court wanted to know whether R.C. 4123.931 is unconstitutional on its face and therefore incapable of *any* application to the Holetons' lawsuit. With our answer to that question, the district court would know whether it had to consider R.C. 4123.931 at all. See *Women's Med. Professional Corp.*, 130 F.3d at 193 (statute unconstitutional on its face cannot be enforced under any circumstances).

**{¶ 109}** For these reasons, in addition to those stated by the Chief Justice, I dissent.  I would uphold the facial validity of R.C. 4123.931 and advise the district court accordingly.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

————————————

*Shumaker, Loop & Kendrick, L.L.P., Jack G. Fynes* and *Stefanie E. Berk*, for petitioners.

*Betty D. Montgomery,* Attorney General, *James A. Barnes, G. James Van Heyde* and *James M. Evans*, Assistant Attorneys General, for respondent C. James Conrad, Administrator of Workers' Compensation.

*Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Kathleen J. St. John* and *David M. Paris*, in support of petitioners, for *amicus curiae* Ohio Academy of Trial Lawyers.

*Manley, Burke & Lipton, Andrew S. Lipton* and *Steven M. Ingram*, in support of petitioners, for *amicus curiae* Armco Employees Independent Federation, Inc.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*, in support of petitioners, for *amicus curiae* Ohio AFL-CIO.

*Scott, Scriven & Wahoff, L.L.P., Timothy E. Cowans, William J. Wahoff* and *Richard Goldberg*, in support of respondent, for *amicus curiae* Ohio Council of Retail Merchants.

*Brickler & Eckler, L.L.P.,* and *Kurtis A. Tunnell*, in support of respondent, for *amicus curiae* Ohio Manufacturers' Association.

*Brickler & Eckler, L.L.P., Thomas R. Sant* and *Nan M. Still*, in support of respondent, for *amici curiae* Ohio Chapter of the National Federation of Independent Business and Ohio Farm Bureau Federation, Inc.

*Vorys, Sater, Seymour & Pease, L.L.P., Robert A. Minor* and *Robin R. Obetz*, in support of respondent, for *amici curiae* Kokosing Construction Company, Inc., the Ohio Self-Insurers' Association, and the American Insurance Association.

*Garvin & Hickey* and *Preston J. Garvin*, in support of respondent, for *amicus curiae* Ohio Chamber of Commerce.

*Vozar, Roberts & Matejczyk Co., L.P.A., Thomas J. Vozar, Glenna M. Roberts* and *David M. Matejczyk*, in support of respondent, for *amicus curiae* National Association of Subrogation Professionals.

_____