MODZELEWSKI, APPELLEE, *v.* YELLOW FREIGHT SYSTEMS, INC. ET AL.; UNITED PARCEL SERVICE, INC., APPELLANT.

[Cite as *Modzelewski v. Yellow Freight Sys., Inc.,* 102 Ohio St.3d 192, 2004-Ohio-2365.]

(No. 2003–0664–Submitted January 13, 2004–Decided May 26, 2004.)

**ALICE ROBIE RESNICK, J.**

{¶ 1} This appeal involves the constitutionality of former R.C. 4123.93, which again became effective when we declared its successor, R.C. 4123.931, unconstitutional in *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111.

{¶ 2} On February 10, 1998, appellee, Gregory Modzelewski, received a number of injuries in the course of and arising from his employment with appellant, United Parcel Service, Inc. ("UPS"), a self-insured employer. Modzelewski's injuries resulted from an accident in which Brian Howe, an employee of Yellow Freight Systems, Inc., backed a tractor-trailer into Modzelewski and pinned him against a loading dock. UPS certified Modzelewski's workers' compensation claim and has since paid compensation and benefits pursuant to R.C. Chapter 4123.

{¶ 3} On October 22, 1999, Modzelewski commenced this tort action by filing a complaint in the Summit County Court of Common Pleas against Howe and Yellow Freight, which he later dismissed and refiled on February 1, 2002, naming UPS as a necessary party to the extent that it "claims a subrogated interest in the subject matter of this lawsuit." Modzelewski then moved for summary judgment against UPS, arguing that former R.C. 4123.93 contains the same constitutional infirmities as R.C. 4123.931 and, therefore, is invalid for the reasons stated in *Holeton,* supra. Finding that R.C. 4123.93 improperly distinguishes between claimants who institute lawsuits against third-party tortfeasors and claimants who settle their claims against tortfeasors without filing suit, the trial court granted Modzelewski's motion for summary judgment. In a subsequent order, the court entered final judgment as to these parties upon an express determination that "there is no just cause for delay."

{¶ 4} The court of appeals affirmed the judgment of the trial court, finding as follows:

{¶ 5} "After careful review of the record and the applicable law, this Court finds that former R.C. 4123.93 is unconstitutional. Former R.C. 4123.93, like R.C. 4123.931 treats claimants who litigate their claims against third-party tortfeasors differently from those who settle such claims out of court. R.C. 4123.931(D) unfairly deterred claimants from pursuing settlement over litigation because it stated that the entire amount of any settlement was unconditionally subject to subrogation, whereas a litigant could obtain a special verdict [or jury interrogatories] to protect the entire amount of [the] award from being subject to subrogation. Former R.C. 4123.93(D) unfairly deterred claimants from pursuing litigation over settlement because it stated that subrogation was automatic 'only if' the claimant was a party to litigation involving the third-party tortfeasor, with no mention of such in regard to settlements." (Citations omitted.)

{¶ 6} The cause is now before this court pursuant to the acceptance of a discretionary appeal.

{¶ 7} The sole issue for our consideration is whether R.C. 4123.93, as enacted by Am.Sub.H.B. No. 107, effective October 20, 1993, 145 Ohio Laws, Part II, 3187, is unconstitutional.[1]

{¶ 8} As relevant here, R.C. 4123.93 provides:

{¶ 9} "(B) The administrator of workers' compensation, for the amount of compensation and benefits paid to or on behalf of an employee from any [workers' compensation] fund * * *, and a self-insuring employer, for the amount of compensation and benefits paid to or on behalf of his employee for any injury or occupational disease that is compensable under this chapter or Chapter 4121., 4127., or 4131. of the Revised Code, less the amount of reasonable attorney's fees and court costs actually incurred by the employee in the action, are subrogated to

---

1. When the 120th General Assembly enacted Am.Sub.H.B. No. 107, it added divisions (B), (C), and (D) to former R.C. 4123.93, forming Ohio's first subrogation statute in the workers' compensation context. The 121st General Assembly repealed former R.C. 4123.93 when it enacted R.C. 4123.931 as part of Am.Sub.H.B. No. 278, effective September 29, 1995. 146 Ohio Laws, Part II, 3581. In *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111, which was decided on June 27, 2001, this court held R.C. 4123.931 to be unconstitutional. As a result, former R.C. 4123.93 again became effective. See *State v. Sullivan* (2001), 90 Ohio St.3d 502, 739 N.E.2d 788, paragraph two of the syllabus. Following our decision in *Holeton*, the 124th General Assembly repealed existing R.C. 4123.93 and 4123.931 and enacted new versions of these subrogation statutes as part of Sub.S.B. No. 227. However, new R.C. 4123.93 and 4123.931 did not take effect until April 9, 2003. Accordingly, UPS's subrogation rights in this case are governed by R.C. 4123.93 as enacted by Am.Sub.H.B. No. 107 in 1993. Throughout the remainder of this opinion, we will refer to this version of R.C. 4123.93 without the designation "former."

all of the rights of that employee against a third-party tortfeasor involving that compensable injury or disease.

{¶ 10} "* * *

{¶ 11} "(D) The right of subrogation which inures to the benefit of the administrator, employer, or self-insuring employer under division (B) of this section is automatic and applies only if the employee is a party to an action involving the third-party tortfeasor." 145 Ohio Laws, Part II, 3187.

{¶ 12} In *Holeton*, we held that R.C. 4123.931(D) violated Sections 2, 16, and 19, Article I of the Ohio Constitution, in part because it distinguished between claimants who try their tort claims and claimants who settle their tort claims. In the case where an award or judgment is rendered in the third-party action, R.C. 4123.931(D) permitted the claimant to save from subrogation those portions of his or her tort recovery that do not represent or duplicate workers' compensation benefits. But where a settlement was reached with the third party, R.C. 4123.931(D) subjected the entire amount of the claimant's tort recovery to the reimbursement right of the statutory subrogee. We found this framework unconstitutional because "it allows for reimbursement from proceeds that do not constitute a double recovery" for the settling claimant. Id., 92 Ohio St.3d at 126, 748 N.E.2d 1111. In particular, we explained that "[s]uch disparate treatment of claimants who settle their tort claims is irrational and arbitrary because * * * there are situations where claimants' tort recovery is necessarily limited to amounts that if retained along with workers' compensation cannot possibly result in a double recovery." Id. at 132, 748 N.E.2d 1111.

{¶ 13} R.C. 4123.93(D) embodies a distinction similar to that of R.C. 4123.931(D), only it favors out-of-court settlement over litigation. Under R.C. 4123.93(D), claimants who institute lawsuits against third-party tortfeasors are treated differently from claimants who settle their third-party claims without filing suit, as only the former claimants' tort recovery is subjected to the reimbursement right of the statutory subrogee.

{¶ 14} UPS argues, however, that this court did not find R.C. 4123.931 to be unconstitutional in *Holeton* "simply because claimants who tried their claims were treated differently than those who settled their claims. * * * In *Holeton*, it was the effect the statute had on those claimants who chose to settle their claims that made R.C. 4123.931 unconstitutional. * * * The statute operated whether or not a double recovery had occurred for those who settled their claims." According to UPS, the government has a legitimate interest in "encouraging claimants to settle their claims without going through the time and expense of a trial." UPS submits that R.C. 4123.93 does not allow for reimbursement from the claimant's tort recovery "unless the injured worker has been fully compensated for his injuries and losses" and "a double recovery [has been] proven." In this regard,

UPS points out that contrary to Modzelewski's assertions, the General Assembly has made the right to subrogation "automatic" in R.C. 4123.93(D) not to create "an irrebuttable presumption" of double recovery, but to prevent the claimant from filing a third-party suit "without informing the employer, thereby circumventing the employer's rights."

{¶ 15} We need not consider whether R.C. 4123.93 is unconstitutional solely because it tends to penalize those claimants who, due to no fault of their own, are unable to settle their third-party claims within the applicable statute of limitations. Nor is it necessary for us to determine whether R.C. 4123.93 implicates the fundamental right of access to courts, thereby invoking the so-called strict-scrutiny test. Under the rational-relationship test, and for the reasons stated in *Holeton*, R.C. 4123.93 is unconstitutional because it precludes claimants who are parties to actions against third-party tortfeasors from showing that their tort recovery or portions thereof do not duplicate their workers' compensation recovery and, therefore, do not represent a double recovery.

{¶ 16} In reaching this conclusion, we fully agree with UPS that by making the right of subrogation "automatic" in R.C. 4123.93(D), the General Assembly meant only to qualify that right as self-executing. But automatic or not, the right of subrogation under R.C. 4123.93 cannot be construed to apply only when the claimant receives a double recovery. To the contrary, R.C. 4123.93(B) expressly provides that the subrogee, for the amount of compensation and benefits paid, is "subrogated to *all of the rights* of that employee against a third-party tortfeasor involving that compensable injury or disease." (Emphasis added.)

{¶ 17} UPS proffers the First Appellate District's decision in *Moellman v. Niehaus* (Feb. 5, 1999), 1st Dist. No. C–971113, 1999 WL 49370, as supporting the notion that R.C. 4123.93 can be interpreted to apply only when the claimant's tort recovery is duplicative of workers' compensation. In actuality, however, *Moellman* demonstrates just the opposite.

{¶ 18} In *Moellman,* the claimant filed a third-party suit and ultimately settled with the tortfeasor's insurer for policy limits of $12,500. The claimant's employer, who had paid more than $23,000 in workers' compensation and medical benefits, intervened to protect its subrogation interest in the amount minus attorney fees and costs pursuant to R.C. 4123.93. The court of appeals held that a self-insured employer is not entitled to priority in the distribution of proceeds from the tortfeasor's insurance policy when the policy limits are insufficient to fully compensate the claimant for his actual loss.

{¶ 19} In reaching its decision, however, the court in *Moellman* was constrained to acknowledge that "[t]he former statute [i.e., the version we review today] contains no * * * provision that would allow any damages to be excluded from the right of subrogation under any circumstances." Nevertheless, the court

found the statute inapplicable, relying on a case that held a contractual subrogation clause, which purported to apply under similar circumstances, to be against public policy and, therefore, unenforceable. Thus, *Moellman* did not interpret R.C. 4123.93 to apply only when the claimant receives a double recovery. To the contrary, the court specifically recognized that the statute applies when there is no double recovery and then went on to nullify its provisions.

{¶ 20} Accordingly, we hold that pursuant to *Holeton*, supra, R.C. 4123.93, as enacted by Am.Sub.H.B. No. 107, effective October 20, 1993, violates Sections 2, 16, and 19, Article I of the Ohio Constitution and, therefore, is unconstitutional.

{¶ 21} Based on the foregoing, the judgment of the court of appeals is affirmed.

Judgment affirmed.

F.E. SWEENEY, J., concurs.

MOYER, C.J., and O'CONNOR, J., concur in judgment only.

PFEIFER, J., concurs in judgment only.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

------

**MOYER, C.J., concurring in judgment only.**

{¶ 22} I write separately to explain my reasons for concurring with the majority decision. Although I agree with the ultimate holding of the majority, I do not agree that the constitutionality of former R.C. 4123.93 depends on its similarities to the statute analyzed in *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111. Rather, I believe that the constitutionality of former R.C. 4123.93 depends on whether the government has a rational basis for distinguishing between employees who settle their claims against third-party tortfeasors before initiating a lawsuit and those who settle after initiating a lawsuit.

I

{¶ 23} This case addresses the constitutionality of former R.C. 4123.93, 145 Ohio Laws, Part II, 3188–3189, which became effective when this court held its successor statute, R.C. 4123.931, unconstitutional in *Holeton*. Both former R.C. 4123.93 and its successor statute governed the circumstances in which a self-insured employer who has paid workers' compensation benefits to an employee for an injury caused by a third-party tortfeasor may "step into the legal shoes" of the employee and exercise his or her right to recover damages from the tortfeasor. Of critical legal import, however, is that the event that triggers this statutory right of subrogation in former R.C. 4123.93 differs significantly from the event that triggers that right in R.C. 4123.931. I examine each statute

separately to highlight this important difference and to make clear the manner in which that difference should affect our analysis.

## A

{¶ 24} The statute at issue in *Holeton,* R.C. 4123.931(D), distinguished between two groups of employees: those who fully litigated their claims against third-party tortfeasors and those who settled such claims. 146 Ohio Laws, Part II, 3596–3597. If the employee litigated the third-party claim to completion, the statute allowed the employee to obtain jury interrogatories segregating the damages that did not represent workers' compensation benefits and, therefore, were not subject to the reimbursement right of the statutory subrogee. 92 Ohio St.3d at 125, 748 N.E.2d 1111. If the employee settled, by contrast, the entire amount of the settlement was presumed to be subject to the reimbursement right of the statutory subrogee. Id. at 125–126, 748 N.E.2d 1111. Hence, the statute treated employees who fully litigated third-party claims more favorably than the employees who settled by affording the former a protection not afforded the latter.

{¶ 25} In addressing the constitutionality of R.C. 4123.931(D), the majority in *Holeton* held that the statute violated the Ohio Constitution because claimants who opted for settlement, unlike claimants who opted for trial, " 'ha[d] no comparable method or opportunity to shield a portion of their damages from the subrogee.' " Id. at 132, 748 N.E.2d 1111, quoting from the petitioners' brief. I dissented. Id. at 135–139, 748 N.E.2d 1111. My disagreement with the majority centered on whether the government had a rational basis for the disparate treatment. I concluded that it plainly did. Id. at 138, 748 N.E.2d 1111. That rational basis was to prevent collusive settlements; for "[w]ithout the restriction regarding settlement awards in R.C. 4123.931(D), employees could accept a lower settlement amount from the tortfeasor, in exchange for an agreement stating that the entire amount was not subject to subrogation." Id. at 138, 748 N.E.2d 1111. Notwithstanding my dissent in *Holeton,* however, I recognize its holding as controlling precedent.

## B

{¶ 26} The statute at issue in the instant case, former R.C. 4123.93, differs significantly from the one invalidated in *Holeton.* Enacted in 1993, former R.C. 4123.93(D) provides that "[t]he right of subrogation which inures to the benefit of the administrator, employer, or self-insuring employer under division (B) of this section is automatic and applies *only if the employee is a party to an action involving the third-party tortfeasor.*" (Emphasis added.) 145 Ohio Laws, Part II, 3188–3189. This provision thus required claimants to disgorge that portion of

their recovery that represented payments made by his or her employer for workers' compensation benefits.

{¶ 27} Significantly, however, the subrogation contemplated in former R.C. 4123.93 occurs only if the employee filed a lawsuit (an "action"). If the employee settled prior to filing a lawsuit, the employee could retain the full settlement amount; but if the employee filed a complaint and then settled the following day, the employee would be required to "share" that recovery with the employer that paid his or her workers' compensation benefits.

{¶ 28} In view of this disparate treatment, the dispositive issue in this case is simply whether the government has a rational basis for distinguishing between claimants who settle their claims against third-party tortfeasors before initiating a lawsuit and claimants who settle after initiating a lawsuit. No rational basis for this distinction has been offered to us by the parties or by the dissent. I therefore conclude that the statute is unconstitutional because the filing of a legal action against a third-party tortfeasor bears no rational relationship to whether a portion of the claimant's recovery should be paid to the claimant's employer.

## II

{¶ 29} The foregoing analysis makes clear that *Holeton* has little impact on our decision today. The reasoning set forth in the dissenting opinions in *Holeton* cannot serve as a basis to uphold the legislation in the instant case. That is to say, the rational basis that I believe supported the disparate treatment in *Holeton*—the prevention of collusive settlements—does not exist to support the statute at issue in the instant case because the unequal treatment of claimants authorized by former R.C. 4123.93(D) does not prevent collusive settlements. Indeed, it would be incongruous to uphold a statute that *favors* settlement before trial (former R.C. 4123.93[D]) based upon the reasoning in a case that addressed a statute that *disfavored* settlement before trial (R.C. 4123.931[D]). Given that the rational basis that I identified in *Holeton* cannot serve as the rational basis in the instant case, the government must have a *different* rational basis for the disparate treatment authorized by former R.C. 4123.93(D).

{¶ 30} Finally, I am aware that one could concur in the majority opinion by applying stare decisis—a principle that I have applied in many instances. I believe that we are not directly bound by *Holeton*, however, because that decision addressed a different statute than the one before us today. This point is perhaps best illustrated by observing that, if the state *had* a rational basis for the disparate treatment authorized by former R.C. 4123.93(D) (a distinct possibility given that its successor statute favored a different class of employees), then stare decisis would not preclude the court from upholding the legislation.

{¶ 31} Nevertheless, I believe that the disparate treatment authorized by former R.C. 4123.93 is less justified than that which was authorized by the statute in *Holeton*. Indeed, we have been offered no rational basis for why the filing of an "action" should trigger the employer's statutory right of subrogation. Thus, because a majority of this court held that the statute in *Holeton* did not have a rational basis and because the statute before us today has less justification than the statute in *Holeton*, I believe that the majority decision is consistent with our precedent.

{¶ 32} For the foregoing reasons, I concur with the majority in judgment only.

O'CONNOR, J., concurs in the foregoing opinion.

---

PFEIFER, J., concurring in judgment only.

{¶ 33} I join the concurrence of Chief Justice Moyer, except to the extent that it is critical of *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111.

---

O'DONNELL, J., dissenting.

{¶ 34} I disagree with the majority's equal-protection rational-basis analysis and therefore respectfully dissent.

{¶ 35} Where, as here, a classification that neither involves fundamental rights nor proceeds along suspect lines "is accorded a strong presumption of validity." *Heller v. Doe* (1993), 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257. Furthermore, "[i]n areas of social and economic policy, [such a classification] must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fed. Communications Comm. v. Beach Communications, Inc.* (1993), 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211.

{¶ 36} The majority has avoided application of that test by following *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111, where the court concluded that the "disparate treatment of claimants who settle their tort claims is irrational and arbitrary because * * * *there are situations* where claimants' tort recovery is necessarily limited to amounts that if retained along with workers' compensation cannot possibly result in a double recovery." (Emphasis added.) Id. at 132, 748 N.E.2d 1111. In this case, the majority finds the classification "unconstitutional because it precludes claimants who are parties to actions against third-party tortfeasors from showing that their tort recovery or

portions thereof do not duplicate their workers' compensation recovery and, therefore, do not represent a double recovery."

{¶ 37} Now, rather than deferring to the General Assembly and determining whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *Beach Communications,* 508 U.S. at 313, 113 S.Ct. 2096, 124 L.Ed.2d 211, the majority has decided that if a court can come up with any set of facts that demonstrates how "irrational and arbitrary" the classification could be, the law must be struck down as violative of equal protection.

{¶ 38} But "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices"—even if wisdom dictates the irrationality and arbitrariness of favoring claimants who settle over those who litigate. Id. When, as here, "there are 'plausible reasons'" for the General Assembly's action, "'our inquiry is at an end.'" Id., 508 U.S. at 313, 113 S.Ct. 2096, 124 L.Ed.2d 211, quoting *United States RR. Retirement Bd. v. Fritz* (1980), 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368. See, also, *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 58, 717 N.E.2d 286, quoting *Heller,* 509 U.S. at 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 ("a state has no obligation whatsoever 'to produce evidence to sustain the rationality of a statutory classification'").

{¶ 39} By failing to accord a strong presumption of validity to classifications that involve neither fundamental rights nor suspect classes, the majority has ignored long-standing equal protection jurisprudence, under which the determination of the wisdom of a statute "'must come from [the legislature], not the courts. Our concern here * * * is with power, not with wisdom.'" *United States RR. Retirement Bd. v. Fritz,* 449 U.S. at 176, 101 S.Ct. 453, 66 L.Ed.2d 368, quoting *Flemming v. Nestor* (1960), 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435.

{¶ 40} Therefore, when the General Assembly enacts a law pursuant to its constitutionally derived authority—that is, when the legislature acts in furtherance of a legitimate governmental interest—this court may not strike down a law simply because the law "'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams* (1970), 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491, quoting *Lindsley v. Natural Carbonic Gas Co.* (1911), 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369. Indeed, "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. Chicago* (1913), 228 U.S. 61, 69–70, 33 S.Ct. 441, 57 L.Ed. 730. Under the doctrine of separation of powers, the Constitution confers the authority to resolve those practical problems and rough accommodations to the legislative—not the judicial—branch.

{¶ 41} Because the majority has improperly invaded the domain of the legislative branch, I cannot join today's opinion. Accordingly, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

---

Gary W. Kisling, for appellee.

Garvin & Hickey, L.L.C., Michael J. Hickey, Daniel M. Hall, Sandee E.B. Reim and Preston J. Garvin, for appellant United Parcel Service, Inc.

Paul W. Flowers Co., L.P.A., W. Craig Bashein and Paul W. Flowers, urging affirmance for amicus curiae Ohio Academy of Trial Lawyers.