{¶ 8} I believe we are duty-bound to address respondents' objections, pursuant to Civ.R. 53(E)(4)(b). See Drummond v. Drummond, 10th Dist. No. 02AP-700, 2003-Ohio-587, ¶ 13; Ferretti v. Graham (Feb. 13, 2001), 10th Dist. No. 00AP-765; In re Gilfillen, 10th Dist. No. 02AP-1239, 2003-Ohio-3011, ¶ 17 ("resolution of the objections to the magistrate's findings of fact is not inconsequential. * * * Knowing which of the magistrate's factual findings the [trial] court adopted or rejected allows the parties, and [the appellate] court, to proceed appropriately in the appellate review of the [trial] court's decision.")
 {¶ 9} For this reason, I dissent from the majority's conclusion that respondents' objections are moot, and would rule upon them. I concur in the majority opinion in all other respects, and I concur in the judgment.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. United Auto :
Aerospace Agricultural Implement :
Workers of America, Region 2-B, :
 [Relator], :
v. : No.
03AP-361 Ohio Bureau of Workers' Compensation : (REGULAR CALENDAR)
and James Conrad, Administrator, :
Ohio Bureau of Workers' Compensation, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on January 30, 2004 Stephen E. Mindzak Law Offices, LLC, and Stephen E. Mindzak, for relator.
Jim Petro, Attorney General, James A. Barnes and Erica L. Bass, for respondents.
 IN MANDAMUS {¶ 10} In this original action, relator, the United Auto Aerospace 
Agricultural Implement Workers of America, Region 2-B ("UAW"), seeks an extraordinary writ of mandamus compelling the Ohio Bureau of Workers' Compensation and its administrator, James Conrad (referred to herein as a single respondent, "BWC"), to comply with the Ohio Supreme Court's decision in Holeton v. Crouse Cartage Co. (2001), 92 Ohio St.3d 115.
Findings of Fact:
 {¶ 11} In the present action, the parties have not presented facts relating to a specific workers' compensation claim or claimant, nor any facts relating to a specific tort action against a third-party tortfeasor. Only one item of evidence was submitted, a sample notice of subrogation rights sent by the BWC to an employer and injured worker.
Legislative History and Procedural Background:
 {¶ 12} 1. In September 1995, the Ohio General Assembly enacted House Bill 278 ("H.B. 278"), which was codified at R.C. 4123.931, providing as follows:
(A) The payment of compensation or benefits pursuant to this chapter or Chapter 4121., 4127., or 4131., of the Revised Code creates a right of subrogation in favor of a statutory subrogee against a third party. A statutory subrogee's subrogation interest includes past payments of compensation and medical benefits and estimated future values of compensation and medical benefits arising out of an injury to or disability or disease of a claimant.
(B) A claimant shall notify a statutory subrogee of the identity of all third parties against whom the claimant has or may have a right of recovery. No settlement, compromise, judgment, award, or other recovery in any action or claim by a claimant shall be final unless the claimant provides the statutory subrogee with prior notice and a reasonable opportunity to assert its subrogation rights. If a statutory subrogee is not given that notice, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest.
(C) The right of subrogation under this chapter is automatic, regardless of whether a statutory subrogee is joined as a party in an action by a claimant against a third party. A statutory subrogee may assert its subrogation rights through correspondence with the claimant and the third party or their legal representatives. A statutory subrogee may institute and pursue legal proceedings against a third party either by itself or in conjunction with a claimant. If a claimant disputes the validity or amount of an asserted subrogation interest, the claimant shall join the statutory subrogee as a necessary party to the action against the third party.
(D) The entire amount of any settlement or compromise of an action or claim is subject to the subrogation right of a statutory subrogee, regardless of the manner in which the settlement or compromise is characterized. Any settlement or compromise that excludes the amount of compensation or medical benefits shall not preclude a statutory subrogee from enforcing its rights under this section. The entire amount of any award or judgment is presumed to represent compensation and medical benefits and future estimated values of compensation and medical benefits that are subject to a statutory subrogee's subrogation rights unless the claimant obtains a special verdict or jury interrogatories indicating that the award or judgment represents different types of damages.
(E) Subrogation does not apply to the portion of any judgment, award, settlement, or compromise of a claim to the extent of a claimant's attorney's fees, costs, or other expenses incurred by a claimant in securing the judgment, award, settlement, or compromise, or the extent of medical, surgical, and hospital expenses paid by a claimant from the claimant's own resources for which reimbursement is not sought. No additional attorney's fees, costs, or other expenses in securing any recovery may be assessed against any subrogated claims of a statutory subrogee.
Under R.C. 4123.93(B), the term "statutory subrogee" included the BWC and self-insured employers.
 {¶ 13} 2. In June 1998, Rick Holeton was injured when he was working in a lift device that was hit by a truck. The BWC paid workers' compensation benefits. See Holeton.
 {¶ 14} 3. Mr. Holeton and other related plaintiffs filed a tort action in federal district court against the truck driver and his employer. The BWC, which had already paid wage and medical benefits exceeding $190,000, asserted a "subrogation claim against any settlement made or judgment paid to Rick Holeton by or on behalf of" these defendants.Holeton, at 116.
 {¶ 15} 4. In the trial court, plaintiffs disputed "the validity of BWC's subrogation claim and argue[d] that the statute violates relevant sections of Ohio's constitution." Id. Plaintiffs filed a "motion for summary judgment asking the court to declare the subrogation statute unconstitutional" or, in the alternative, to certify the issue to the Ohio Supreme Court. Id.
 {¶ 16} 5. The federal district court in Holeton certified numerous questions of law to the Ohio Supreme Court regarding former R.C. 4123.931
(H.B. 278), and the Supreme Court agreed to answer eight questions. In response to five of the questions, the court found no inconsistency with the state constitution, statutes, or rules. However, it answered the following questions in the affirmative:
2. Does R.C. § 4123.931 violate Article I, Section 19 of the Ohio Constitution?
3. Does R.C. § 4123.931 violate Article I, Section 16 of the Ohio Constitution?
* * *
5. Does R.C. § 4123.931 violate Article I, Section 2 of the Ohio Constitution?
 {¶ 17} 6. In its Holeton opinion, the Ohio Supreme Court observed that, although the state has a legitimate interest in preventing double recoveries and may constitutionally preclude a tort victim from recovering twice for the same item of loss or type of damages, the statute must be reasonably related to that purpose. The court noted that reductions for collateral benefits are permissible only to the extent that the loss for which the collateral benefit compensates is actually included in the award. Id. at 122. Where the amount recovered from the tortfeasor combined with the workers' compensation benefits does not cover the actual total loss, no double recovery has occurred. Id. at 128. Further, the court held that a claimant-plaintiff has "a constitutionally protected interest in his or her tort recovery to the extent that it does not duplicate the employer's or bureau's compensation outlay." Id. at 122. A statue that "operates to take more of the claimant's tort recovery than is duplicative of the statutory subrogee's workers' compensation expenditures" is not reasonably related to its purpose and violates the state constitution. Id.
 {¶ 18} 7. The court focused on two specific provisions of former R.C.4123.931 that rendered it unconstitutional:
* * * (1) the portion of R.C. 4123.931(A) that gives the statutory subrogee a right of subrogation with respect to "estimated future values of compensation and medical benefits," and (2) the portion of R.C.4123.931(D) providing that "[t]he entire amount of any settlement or compromise of an action or claim is subject to the subrogation right of a statutory subrogee, regardless of the manner in which the settlement or compromise is characterized. Any settlement or compromise that excludes the amount of compensation or medical benefits shall not preclude a statutory subrogee from enforcing its right under this section."
Holeton, at 122.
 {¶ 19} 8. With respect to the first provision, the court noted that the statute gave a right of subrogation with respect to "estimated future values of compensation and medical benefits," but the claimant may never receive these future benefits. Id. at 123. For example, the estimated future value may be based on a life expectancy of an injured worker or widow (in a wrongful death situation), but if that person dies prematurely or if the widow remarries shortly after the calculation is made, the subrogee then gets a windfall from the tort recovery because the projected benefits are never paid. The court concluded that the risk of overestimated future expenditures should not fall on the innocent claimant. The court suggested that "giving the subrogee the same kind of offset or credit against future payments that has always been used to recoup overpayments of compensation" would provide a more full and accurate reimbursement to the subrogee. Id. at 125.
 {¶ 20} 9. Next, the court in Holeton concluded that the statute created two classes, those who obtain a jury award and those who obtain a settlement award, and that H.B. 278's disparate treatment of those who settle their tort claims was arbitrary and unreasonable. When a claimant proceeded to trial against a third party and obtained a jury award, former R.C. 4123.931(D) provided that the jury would determine the amount of damages representing lost wages, medical costs, etc., and would also determine the portion of damages not covered by workers' compensation benefits, such as damages for pain and suffering, etc. Accordingly, part of the jury's total award of damages would go to reimburse the subrogee and part would go to the claimant to compensate him for losses not covered by workers' compensation benefits.
 {¶ 21} In contrast, when a claimant obtained a settlement award, the entire amount of the settlement award was subject to the reimbursement right of the subrogee. The claimant "[was] precluded, under any circumstances, from showing that his or her settlement or portions thereof" did not represent or duplicate workers' compensation benefits. Id. at 125-126. The court noted that, when the settlement was for an amount less than the actual total damages, the combined amount of the settlement proceeds and workers' compensation benefits might be insufficient to cover all the claimant's actual loss. Therefore, former R.C. 4123.931(D) operated unconstitutionally "in these situations because it allows for reimbursement from proceeds that do not constitute a double recovery." Id. at 126.
 {¶ 22} Moreover, in settlement situations, H.B. 278 could extinguish the rights of minor children, parents, and siblings who are beneficiaries in a wrongful death action but whose losses are not compensated under the workers' compensation laws. The court held: "In this situation, the statute operates unconstitutionally to allow one person's tort recovery to be reduced or extinguished by another person's workers' compensation benefits." Id. at 127.
 {¶ 23} Further, the court noted that the law of Ohio, as a general rule, does not tolerate any lien that prevent litigants from settling their controversies or which tends to encourage, promote, or extend litigation. Id. at 128. The court indicated that the subrogation statute impermissibly discouraged settlement.
 {¶ 24} 10. The Ohio Supreme Court noted in Holeton that plaintiffs throughout Ohio were challenging the statute's constitutionality in tort actions. The court cited several of these cases and noted that it had granted discretionary appeals in Yoh v. Schlachter (Mar. 17, 2000), Williams App. No. WM-99-008 (a wrongful death action), and In re Estateof Stewart (June 28, 2000), Lorain App. No. 99CA007422 (also a wrongful death action). See Holeton, at 129.
 {¶ 25} 11. In Holeton, the Ohio Supreme Court held as follows:
 Conclusion
We hold that R.C. 4123.931 does not violate Sections 15, 28, or 35, Article II of the Ohio Constitution, is not rendered invalid by Civ.R. 49(C), and does not constitute an invalid waiver under R.C. 4123.80. We hold, however, that R.C. 4123.931 does violate Sections 2, 16, and 19, Article I of the Ohio Constitution. In so holding, we do not accept the proposition that a workers' compensation subrogation statute is per se
unconstitutional, and nothing in this opinion shall be construed to prevent the General Assembly from ever enacting such a statute. We holdonly that R.C. 4123.931, in its present form, is unconstitutional.
Accordingly, we advise the federal court that R.C. 4123.931 is unconstitutional under Ohio law.
Judgment accordingly.
Id. at 135. (Emphasis added.)
 {¶ 26} 12. In November 2002, the General Assembly enacted Substitute Senate Bill 227 ("S.B. 227"), which amended several statutes, including the following:[1]
Sec. 4123.93. As used in sections 4123.93 and 4123.931 of the Revised Code:
(A) "Claimant" means a person who is eligible to receive compensation or, medical benefits, or death benefits under this chapter or Chapter 4121., 4127., or 4131. of the Revised Code, including any dependent orperson whose eligibility is the result of an injury to or occupationaldisease of another person.
(B) "Statutory subrogee" means the administrator of the bureau of
workers' compensation, a self-insuring employer, or an employer that contracts for the direct payment of medical services pursuant to division (L) of section 4121.44 of the Revised Code.
(C) "Subrogated amounts" include, but are not limited to, thefollowing:
 (1) Amounts recoverable from any third party, notwithstanding anylimitations by the third party concerning its responsibility to makepayments in cases involving workers' compensation under Chapter 4121.,4123., 4127., or 4131. of the Revised Code;
 (2) Amounts recoverable from a claimant's insurer in connection withunderinsured or uninsured motorist coverage, notwithstanding anylimitation contained in Chapter 3937. of the Revised Code;
 (3) Amounts that a claimant would be entitled to recover from apolitical subdivision, notwithstanding any limitations contained inChapter 2744. of the Revised Code.
 (D) "Third party" means an individual, private insurer, public or private entity, or public or private program that is or may be liable to make payments to a person without regard to any statutory duty contained in this chapter or Chapter 4121., 4127., or 4131. of the Revised Code.
(D) "Subrogation interest" includes past, present, and estimated futurepayments of compensation, medical benefits, rehabilitation costs, or deathbenefits, and any other costs or expenses paid to or on behalf of theclaimant by the statutory subrogee pursuant to this chapter orChapter 4121., 4127., or 4131. of the Revised Code.
 (E) "Net amount recovered" means the amount of any award, settlement,compromise, or recovery by a claimant against a third party, minus theattorney's fees, costs, or other expenses incurred by the claimant insecuring the award, settlement, compromise, or recovery. "Net amountrecovered" does not include any punitive damages that may be awarded by ajudge or jury.
 (F) "Uncompensated damages" means the claimant's demonstrated or provendamages minus the statutory subrogee's subrogation interest.
Sec. 4123.931. (A) The payment of compensation or benefits pursuant to this chapter or Chapter 4121., 4127., or 4131., of the Revised Code creates a right of subrogation recovery in favor of a statutory subrogee against a third party. A statutory subrogee's subrogation interestincludes past payments of compensation and medical benefits and estimatedfuture values of compensation and medical benefits arising out of aninjury to or disability or disease of a claimant, and the statutorysubrogee is subrogated to the rights of a claimant against that thirdparty. The net amount recovered is subject to a statutory subrogee's rightof recovery.
 (B) If a claimant, statutory subrogee, and third party settle orattempt to settle a claimant's claim against a third party, the claimantshall receive an amount equal to the uncompensated damages divided by thesum of the subrogation interest plus the uncompensated damages,multiplied by the net amount recovered, and the statutory subrogee shallreceive an amount equal to the subrogation interest divided by the sum ofthe subrogation interest plus the uncompensated damages, multiplied bythe net amount recovered, except that the net amount recovered mayinstead be divided and paid on a more fair and reasonable basis that isagreed to by the claimant and statutory subrogee. If while attempting tosettle, the claimant and statutory subrogee cannot agree to theallocation of the net amount recovered, the claimant and statutorysubrogee may file a request with the administrator of workers'compensation for a conference to be conducted by a designee appointed bythe administrator, or the claimant and statutory subrogee may agree toutilize any other binding or nonbinding alternative dispute resolutionprocess.
 The claimant and statutory subrogee shall pay equal shares of the feesand expenses of utilizing an alternative dispute resolution process,unless they agree to pay those fees and expenses in another manner. Theadministrator shall not assess any fees to a claimant or statutorysubrogee for a conference conducted by the administrator's designee.
 (C) If a claimant and statutory subrogee request that a conference beconducted by the administrator's designee pursuant to division (B) ofthis section, both of the following apply:
 (1) The administrator's designee shall schedule a conference on orbefore sixty days after the date that the claimant and statutory subrogeefiled a request for the conference.
 (2) The determination made by the administrator's designee is notsubject to Chapter 119. of the Revised Code.
 (D) When a claimant's action against a third party proceeds totrial and damages are awarded, both of the following apply:
 (1) The claimant shall receive an amount equal to the uncompensateddamages divided by the sum of the subrogation interest plus theuncompensated damages, multiplied by the net amount recovered, and thestatutory subrogee shall receive an amount equal to the subrogationinterest divided by the sum of the subrogation interest plus theuncompensated damages, multiplied by the net amount recovered.
 (2) The court in a nonjury action shall make findings of fact, and thejury in a jury action shall return a general verdict accompanied byanswers to interrogatories that specify the following:
 (a) The total amount of the compensatory damages;
 (b) The portion of the compensatory damages specified pursuant todivision (D)(2)(a) of this section that represents economic loss;
 (c) The portion of the compensatory damages specified pursuantto division (D)(2)(a) of this section that represents noneconomicloss.
 (E)(1) After a claimant and statutory subrogee know the net amountrecovered, and after the means for dividing it has been determined underdivision (B) or (D) of this section, a claimant may establish aninterest-bearing trust account for the full amount of the subrogationinterest that represents estimated future payments of compensation,medical benefits, rehabilitation costs, or death benefits, reduced topresent value, from which the claimant shall make reimbursement paymentsto the statutory subrogee for the future payments of compensation,medical benefits, rehabilitation costs, or death benefits. If theworkers' compensation claim associated with the subrogation interest issettled, or if the claimant dies, or if any other circumstance occursthat would preclude any future payments of compensation, medicalbenefits, rehabilitation costs, and death benefits by the statutorysubrogee, any amount remaining in the trust account after finalreimbursement is paid to the statutory subrogee for all payments made bythe statutory subrogee before the ending of future payments shall be paidto the claimant or the claimant's estate.
 (2) A claimant may use interest that accrues on the trust account topay the expenses of establishing and maintaining the trust account, andall remaining interest shall be credited to the trust account.
 (3) If a claimant establishes a trust account, the statutory subrogeeshall provide payment notices to the claimant on or before the thirtiethday of June and the thirty-first day of December every year listing thetotal amount that the statutory subrogee has paid for compensation,medical benefits, rehabilitation costs, or death benefits during the halfof the year preceding the notice. The claimant shall make reimbursementpayments to the statutory subrogee from the trust account on or before thethirty-first day of July every year for a notice provided by thethirtieth day of June, and on or before the thirty-first day of Januaryevery year for a notice provided by the thirty-first day of December. Theclaimant's reimbursement payment shall be in an amount that equals thetotal amount listed on the notice the claimant receives from thestatutory subrogee.
 (F) If a claimant does not establish a trust account as described indivision (E)(1) of this section, the claimant shall pay to the statutorysubrogee, on or before thirty days after receipt of funds from the thirdparty, the full amount of the subrogation interest that representsestimated future payments of compensation, medical benefits,rehabilitation costs, or death benefits.
 (G) A claimant shall notify a statutory subrogee and the attorneygeneral of the identity of all third parties against whom the claimant has or may have a right of recovery, except that when the statutorysubrogee is a self-insuring employer, the claimant need not notify theattorney general. No settlement, compromise, judgment, award, or other recovery in any action or claim by a claimant shall be final unless the claimant provides the statutory subrogee and, when required, the attorneygeneral, with prior notice and a reasonable opportunity to assert its subrogation rights. If a statutory subrogee is and, when required, theattorney general are not given that notice, or if a settlement orcompromise excludes any amount paid by the statutory subrogee, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest.
(C)(H) The right of subrogation under this chapter is automatic, regardless of whether a statutory subrogee is joined as a party in an action by a claimant against a third party. A statutory subrogee may assert its subrogation rights through correspondence with the claimant and the third party or their legal representatives. A statutory subrogee may institute and pursue legal proceedings against a third party either by itself or in conjunction with a claimant. If a statutory subrogeeinstitutes legal proceedings against a third party, the statutorysubrogee shall provide notice of that fact to the claimant. If thestatutory subrogee joins the claimant as a necessary party, or if theclaimant elects to participate in the proceedings as a party, theclaimant may present the claimant's case first if the matter proceeds totrial. If a claimant disputes the validity or amount of an asserted subrogation interest, the claimant shall join the statutory subrogee as a necessary party to the action against the third party.
(D) The entire amount of any settlement or compromise of an action orclaim is subject to the subrogation right of a statutory subrogee,regardless of the manner in which the settlement or compromise ischaracterized. Any settlement or compromise that excludes the amount ofcompensation or medical benefits shall not preclude a statutory subrogeefrom enforcing its rights under this section. The entire amount of anyaward or judgment is presumed to represent compensation and medicalbenefits and future estimated values of compensation and medical benefitsthat are subject to a statutory subrogee's subrogation rights unless theclaimant obtains a special verdict or jury interrogatories indicatingthat the award or judgment represents different types of damages.
 (E) Subrogation does not apply to the portion of any judgment, award,settlement, or compromise of a claim to the extent of a claimant'sattorney's fees, costs, or other expenses incurred by a claimant insecuring the judgment, award, settlement, or compromise, or the extent ofmedical, surgical, and hospital expenses paid by a claimant from theclaimant's own resources for which reimbursement is not sought. Noadditional attorney's fees, costs, or other expenses in securing anyrecovery may be assessed against any subrogated claims of a statutorysubrogee (I) The statutory subrogation right of recovery applies to, butis not limited to, all of the following:
 (1) Amounts recoverable from a claimant's insurer in connection withunderinsured or uninsured motorist coverage, notwithstanding anylimitation contained in Chapter 3937. of the Revised Code;
 (2) Amounts that a claimant would be entitled to recover from apolitical subdivision, notwithstanding any limitations contained inChapter 2744. of the Revised Code;
 (3) Amounts recoverable from an intentional tort action.
 (J) If a claimant's claim against a third party is for wrongful deathor the claim involves any minor beneficiaries, amounts allocated underthis section are subject to the approval of probate court.
 (K) The administrator shall deposit any money collected under thissection into the public fund or the private fund of the state insurancefund, as appropriate. If a self-insuring employer collects money underthis section of the Revised Code, the self-insuring employer shall deductthe amount collected, in the year collected, from the amount of paidcompensation the self-insured employer is required to report undersection 4123.35 of the Revised Code.
In S.B. 227, the General Assembly repealed existing R.C. 4123.35,4123.66, 4123.93, and 4123.931. The statute became effective April 9, 2003, and, under its express terms, applies to workers injured on or after that date.
 {¶ 27} 13. On April 15, 2003, the UAW filed a mandamus action in the Franklin County Court of Appeals seeking a writ compelling the BWC to comply with Holeton. The complaint also seeks a writ compelling the BWC to follow the law in Glaspell v. Ohio Edison Co. (1987), 29 Ohio St.3d 44, in which the court held as follows, at paragraphs one and two of the syllabus:
While clauses limiting the liability of the drafter are ordinarily to be strictly construed, such strict construction need not be applied in the interpretation of an indemnification agreement entered into between business entities in a context of free and understanding negotiation.
When the subject of liability is anticipated in an enforceable indemnity agreement, such indemnification must be provided.
The Court in Glaspell also commented on the construction of certain types of indemnity agreements that are contracts of adhesion:
* * * [T]he law of Ohio generally allows enforcement of indemnity agreements.
Where it is alleged that the agreement protects an indemnitee from the financial consequences of his own negligence, the greater weight of authority, particularly in Ohio, would construe the words of such an agreement most narrowly.
The requirement that this court strictly construe this particular category of indemnity agreement would be unreasonable, in that the rule was developed to guard against a specific practice. Often one party to a contract, being in a position to impose terms upon the other with no realistic opportunity to bargain afforded, would include those standardized clauses in the contract as would unreasonably impose upon the nonbargaining party burdens which were wholly inequitable. With such contracts of adhesion in hand, the drafting party invariably asserted, "the indemnity or the exculpation, so that the policies supporting the rule of `contra proferentem' [against the proffering party], * * * caused the courts to apply the rule." Thus, while clauses limiting the liability of the drafter are ordinarily to be strictly construed, we need not do so when such burden of indemnification was assented to in a context of free and understanding negotiation. * * *
Id. at 46-47. (Citations omitted.)
 {¶ 28} 14. After the complaint was filed, this action was referred to the under-signed magistrate. On May 7, 2003, the BWC filed a motion to dismiss, arguing inter alia that the UAW lacked standing to bring the action and that it had an adequate remedy in the ordinary course of law and was not entitled to an extraordinary writ of mandamus.
 {¶ 29} 15. On August 21, 2003, the magistrate entered an order stating that a ruling on the motion to dismiss would be deferred, and that the merits would be briefed. The BWC filed an answer. One item of certified evidence was submitted, as stated above, and the parties filed briefs. On January 14, 2004, oral argument was held before the magistrate.
Conclusions of Law:
 {¶ 30} In order for the court to issue a writ of mandamus, relator must prove that the respondent has a clear legal duty to perform the requested action, that relator has a clear right to the requested relief, and that relator has no plain and adequate remedy in the ordinary course of the law. E.g., State ex rel. Berger v. McMonagle (1983),6 Ohio St.3d 28. In addition, a threshold requirement in every action is that the complaining party must establish standing to sue. OhioContractors Assn. v. Bicking (1994), 71 Ohio St.3d 318.
 Standing {¶ 31} With respect to standing, the magistrate concludes that relator has established sufficient organizational standing to bring this action on behalf of its members. See, e.g., Ohio Contractors Assn, supra; OhioAcademy of Nursing Homes, Inc. v. Barry (1987), 37 Ohio App.3d 46. See, generally, State ex rel. United Auto Aerospace AgriculturalImplement Workers of Am. v. Ohio Bur. of Workers' Comp., 95 Ohio St.3d 408,2002-Ohio-2491 (hereinafter "United Auto Aerospace"); State ex rel. OhioAFL-CIO v. Ohio Bur. of Workers' Comp., 97 Ohio St.3d 504, 2002-Ohio-6717
(hereinafter "AFL-CIO").
 Compliance with the Mandate in Holeton {¶ 32} In this action, relator insists that it is not seeking a determination that S.B. 227 (as codified in the new version of R.C. 4123.931) is unconstitutional. Rather, relator asserts that it simply wants the BWC to "comply with Holeton."
 {¶ 33} However, the Ohio Supreme Court in Holeton ruled only that H.B. 278, as codified in former R.C. 4123.931, was unconstitutional. The court expressly held "only" that R.C. 4123.931 "in its present form" was unconstitutional. The court did not order any action to be performed by any party. To the extent the court issued a "mandate" in Holeton, it essentially mandated that no lower court could apply H.B. 278 as codified in former R.C. 4123.931 and that the BWC must refrain from applying H.B. 278 as codified in former R.C. 4123.931.
 {¶ 34} In the present action, however, there is no evidence that the BWC continued after the decision in Holeton to apply the provisions of former R.C. 4123.931. Accordingly, a writ ordering the BWC to comply withHoleton is not warranted.
 Compliance with Glaspell {¶ 35} With respect to Glaspell, supra, the magistrate is not convinced that the decision imposes an affirmative duty on the BWC to perform a specific act. Rather, cases such as Glaspell arise when a contracting party seeks enforcement of a particular contract or agreement, and another contracting party seeks to have the contract interpreted against the drafter and/or ruled unenforceable as an adhesion contract. See Sekeres v. Arbaugh (1987), 31 Ohio St.3d 24; Conkey v.Eldridge (Dec. 2, 1999), Franklin App. No. 98AP-1628; Central OhioGraphics, Inc. v. O'Brien Business Equip., Inc. (Mar. 28, 1996), Franklin App. No. 95APE08-1016; Thompson v. Otterbein College (Feb. 6, 1996), Franklin App. No. 95APE08-1009. See, also, Daniel E. Terreri Sons,Inc. v. Mahoning Cty. Bd. of Commrs., 152 Ohio App.3d 95, 2003-Ohio-1227;Information Leasing Corp. v. Jaskot, 151 Ohio App.3d 546, 2003-Ohio-566;Widlar v. Matchmaker Internatl., Lucas App. No. L-01-1433, 2002-Ohio-2836;Wall v. Firelands Radiology, Inc. (1995), 106 Ohio App.3d 313.
 {¶ 36} In this action, however, the evidence does not include any contracts; there is no specific contract that either party seeks to enforce or have held unenforceable. Without a contract to review, the court cannot hold under Glaspell that a contract is unenforceable as an adhesion contract. An extraordinary writ compelling the BWC to refrain from entering adhesion contracts generally would require proof that the BWC had entered adhesion contracts. Moreover, the courts do not issue writs of mandamus to compel observance of a law generally. State ex rel.Tillimon v. Weiher (1992), 65 Ohio St.3d 468; State ex rel. Kuczak v.Saffold (1993), 67 Ohio St.3d 123.
 Adequate Remedy at Law {¶ 37} In order for relator to pursue an action in mandamus, it must establish that it has no adequate remedy at law. E.g., Berger, supra. In the present action, the magistrate concludes that, to the extent that relator's action seeks to have the court find S.B. 227 unconstitutional as codified in R.C. 4123.931, relator and its members have adequate remedies in the ordinary course of law. Specifically, relator may file a declaratory judgment action under R.C. Chapter 2721 seeking a determination of the rights of injured workers under state law, and its members who are injured workers with claims against third-party tortfeasors may seek a determination in the course of their tort actions, as did the claimant-plaintiff in Holeton.
 {¶ 38} In reaching this conclusion, the magistrate first considered the claimed wrongs for which relator seeks a remedy. As set forth above, a review of the legislation indicates that, after the Supreme Court declared former R.C. 4123.931 unconstitutional, the General Assembly amended it in a number of ways. For example, the legislature deleted portions of the statute regarding the rights of beneficiaries in a wrongful death action, attempting to remove the provision that operated unconstitutionally to allow one person's tort recovery to be reduced or extinguished by another person's workers' compensation benefits.
 {¶ 39} In addition, the legislature deleted the language stating that the "entire amount of any settlement" is subject to the subrogation rights of the BWC or employer, which appears to have removed the unrebuttable presumption that all the proceeds of a settlement award constitute a double recovery subject to reimbursement of subrogation interest. In addition, a new section in S.B. 227 provides for allocation of the tort recovery between those items compensated by workers' compensation benefits and those items not compensated under the workers' compensation system — with the allocation being made by a jury in cases that proceed to trial, and the allocation being made by agreement of the claimant, BWC, and other parties in cases that are settled. Relator raises substantial questions about whether the new provisions are unconsti-tutional under Ohio law as elucidated in Holeton, but the magistrate concludes that the ordinary course of law provides an adequate process for addressing and answering this question.
 {¶ 40} Similarly, with regard to the problem of overestimated future benefits, a new provision in S.B. 227 represents a legislative attempt to prevent the risk of overestimated future expenses from falling on the innocent claimant: under the new provision, any overestimated future expenditures may be returned to the claimant's beneficiaries with accrued interest. Again, relator raises important questions as to whether the General Assembly has succeeded in enacting legislation that satisfies constitutional requirements as explained in Holeton, and relator presents forceful arguments that S.B. 227, despite its new and different language, does not effect the state's legitimate goal of preventing double recoveries without imposing unreasonable burdens on injured workers who are tort victims of third-party tortfeasors. Relator contends that S.B. 227 infringes on the constitutional rights of these injured workers in the same way that H.B. 278 did.
 {¶ 41} Nonetheless, notwithstanding this recognition of the significant constitutional issues raised by relator, the magistrate concludes that these issues can be addressed in the ordinary course of law. In Holeton, the constitutional issue regarding H.B. 278 was raised in the ordinary course of law in a tort action commenced in a trial court, a procedural fact that the Supreme Court explicitly noted. Moreover, the Supreme Court in Holeton observed that the constitutionality of H.B. 278 was being challenged in tort actions across the state and that the court had already granted two discretionary appeals. The opinion reflects that injured workers aggrieved by the subrogation provisions in H.B. 278 were pursuing their rights in the ordinary course of law, and the Supreme Court gave no indication inHoleton that the Ohio courts were failing to provide an adequate remedy in the ordinary process of law.
 {¶ 42} Further, the situation here is unlike the situations inSheward, United Auto Aerospace, and AFL-CIO, each of which had special features that distinguish it from the present action. Sheward involved a "rare and extraordinary case" of unusual "magnitude and scope" in which relators contended that the legislation violated the fundamental separation of powers and divested the courts of judicial power; according to the court, the legislation represented a legislative attempt to usurp the power of the Ohio Supreme Court, as demonstrated in the legislature's "statements of intent with regard to the constitutionality" of its legislation in the uncodified sections of the bill. See Sheward, supra, at 459, fn. 7, 467, 474-476, 503-504. Further, the legislation at issue in Sheward was a massive bill affecting every tort action in Ohio and involving "at least forty-eight separate topics," id. at fn. 6, and the court indicated that piecemeal determinations of the constitutionality of the multifarious components of the enormous legislation through individual tort actions was not warranted. Id. at 458, 468.
 {¶ 43} In AFL-CIO, the court stated that granting writs of mandamus and prohibition to determine the constitutionality of statutes will "remain extraordinary" and "limited to exceptional circumstances that demand early resolution." Id. at ¶ 12 (quoting Justice Pfeifer's concurrence in Sheward). However, AFL-CIO involved legislation that would subject workers across the state to unreasonable invasions of their bodily privacy without individualized suspicion — in violation of the constitutional protection against unreasonable searches and seizures — unless prompt action was taken to invalidate the statute, and the court expressed its concern about the "indignity" of such testing without reasonable cause for the intrusion. Id. at ¶ 51. Although the court did not explicitly analyze why an action at law would not have been adequate to protect the rights of these injured workers, the opinion refers to the need for early resolution and suggests that a delay would have resulted in thousands of innocent workers being subjected to the indignity of meritless searches with no constitutional basis, and no remedy for most victims other than a subsequent statement that the search had been impermissible. Just as it is true that one cannot "unring a bell," UnitedStates v. Murray (C.A.6, 1986), 784 F.2d 188, 189, one cannot erase the indignity of a bodily search that is later found to be legally impermissible, and the court's use of extraordinary proceedings appeared to be based in part on the need for prompt action to prevent thousands of unjustified personal searches. Thus, the circumstances in AFL-CIO differ significantly from those in the present action.
 {¶ 44} Likewise, the situation in United Auto Aerospace presented an unusual dispute suitable for prompt resolution in an extraordinary action. There, the Administrator of the BWC had a clear and unambiguous legal duty to promulgate a rule in certain circumstances, and he failed to promulgate a rule before implementing an exercise of authority regarding premiums. United Auto Aerospace, at ¶ 7 — 10. However, the Administrator mooted the issue by subsequently promulgating a rule. Although the Supreme Court did not state explicitly that such violations of clear duty were likely to evade review of any kind unless addressed in the action before it, such a concern appears to underlie the court's ruling.
 {¶ 45} In the present action, S.B. 227 may or may not pass constitutional review, but the legislation reveals no attempt to divest the courts of judicial powers granted by the state constitution as inSheward, nor has the General Assembly attempted to usurp the Supreme Court's authority by refusing to recognize its holdings. Likewise, this action does not present a moot but significant issue that could evade review completely unless addressed in the present action. Further, an action in declaratory judgment or in tort has not been demonstrated to be inadequate for resolving the issues presented here.
 {¶ 46} The magistrate recognizes that the holdings in AFL-CIO andUnited Auto Aerospace regarding mandamus relief could be expanded to include the present action. However, such an expansion of the court's extraordinary jurisdiction in mandamus is not appropriate where ordinary remedies appear to be readily available.
 {¶ 47} In summary, the magistrate concludes that relator has not met its burden in mandamus of proving that the BWC has refused to comply withHoleton or Glaspell. To the extent relator seeks a holding that S.B. 227 is unconstitutional under the principles articulated in Holeton, relator has raised serious and substantial questions, but extraordinary relief in mandamus is not warranted because relator and/or the injured workers it represents have adequate remedies in the ordinary course of law.
 {¶ 48} Accordingly, the court should deny the requested writ of mandamus or grant respondents' motion to dismiss.
[1] A strikethrough indicates where language was deleted from the former statute, and underlining indicates where language was added.